**Richard B. OGILVIE, Trustee of the Property of the Chicago, Milwaukee, St. Paul and Pacific Railroad Company, a corporation; Soo Line Railroad Company, a corporation; and Burlington Northern, Inc., a corporation, Plaintiffs,**

v.

**The STATE BOARD OF EQUALIZATION OF the STATE OF NORTH DAKOTA, and The Honorable Arthur A. Link, as Governor of the State of North Dakota and Chairman of the State Board of Equalization, and The Honorable Byron L. Dorgan, as Tax Commissioner of the State of North Dakota and Secretary of the State Board of Equalization, Defendants.**

Civ. No. A3–79–183.

United States District Court,
D. North Dakota,
Southeastern Division.

July 2, 1980.

Frank J. Magill, Nilles, Hansen, Selbo, Magill & Davies, Ltd., Fargo, N. D., for plaintiffs; Byron D. Olsen, Gen. Sol., Soo

Line R. Co., Minneapolis, Minn., Joseph J. Nagle, Gen. Counsel, Milwaukee Road, Chicago, Ill., Steven L. Wood, Atty., Burlington Northern, Inc., St. Paul, Minn., of counsel.

Kenneth M. Jakes, North Dakota State Tax Dept., Robert W. Wirtz, Leo F. J. Wilking, III, Bismarck, N. D., for defendants.

## ORDER

BENSON, Chief Judge.

Plaintiffs in the above entitled action contend defendants have violated § 306 of the Railroad Revitalization and Regulatory Reform Act of 1976 (the 4–R Act) by discriminatory property tax treatment of plaintiffs' rail transportation property. Plaintiffs seek declaratory relief. An order enjoining defendants, their successors, their agents or employees and those in active concert or participation with them, including the County Treasurers of the fifty-three counties of the State of North Dakota, from collecting the disputed portions of property tax payments due from plaintiffs was entered on February 21, 1980. Pursuant to the court's order, the disputed taxes were deposited with the Clerk of Court. There are now before the court cross motions for summary judgment pursuant to F.R.Civ.P. 56. The parties have entered into a stipulation of facts, and there is no genuine issue as to any material fact.

## FACTS

Plaintiffs are regulated rail carriers engaged in interstate commerce in and through the State of North Dakota. Defendant State Board of Equalization (the Board) is an administrative agency of the State of North Dakota. One of the duties of the Board is to assess annually at its actual value the operating property, including franchises, of railroads operating in North Dakota. N.D.Cent.Code § 57–05–01. The assessed valuation of railroad property is to be certified to the respective counties of North Dakota, N.D.Cent.Code § 57–05–04, for collection of property taxes by the County Treasurers. N.D.Cent.Code § 57–20–07.

There is *de facto* classification of property in North Dakota for property tax purposes. *Soo Line Railroad Co. v. State of North Dakota*, 286 N.W.2d 459, 465 (N.D. 1979). There are four classes of property: (1) farmlands; (2) residential; (3) business real estate; and (4) state-assessed. The first three classes of property are locally assessed. The fourth class is centrally assessed by the Board. Pursuant to § 179 of the North Dakota Constitution, railroad property, N.D.Cent.Code ch. 57–05, public utilities, ch. 57–06, and car line, express and air transportation companies, ch. 57–32, are centrally assessed by the Board.

Railroad property subject to assessment by the Board is "transportation property" as that phrase is used in § 306 of the 4–R Act.

At its annual meeting in August 1979 the Board assessed for taxable year 1979 the operating property of railroads, public utilities, car line, and air transportation companies at 16.8 percent of the true market value of such property. The assessed value of 16.8 percent of true market value was administratively determined by the Board without reference to a sales assessment ratio study.

Commercial and industrial real property that is locally assessed was assessed and equalized for the taxable year 1979 at 12.2 percent of the true market value of such property. The figure of 12.2 percent is a state-wide aggregate mean ratio developed by means of a sales assessment ratio study conducted by the State Supervisor of Assessments.

The assessed value for property taxation purposes of centrally assessed property includes personal property and trade fixtures. The assessed value for property taxation purposes of locally assessed property does not include personal property and trade fixtures. N.D.Const. § 179; N.D.Cent.Code § 57–02–08(25). The portion of the final assessed 1979 valuation of plaintiffs' property attributable to the inclusion of personal property and trade fixtures is as follows: Chicago, Milwaukee, St. Paul and Pacific Railroad Company, 42.93 percent; Soo Line

Railroad Company, 50.11 percent; Burlington Northern, Inc., 49.29 percent.

## JURISDICTION AND ISSUES

Section 306(1) of the 4–R Act[1] declares the following acts by a State, a political subdivision of a State, or a governmental entity or person acting on behalf of such State or subdivision, to be prohibited:

(a) The assessment (but only to the extent of any portion based on excessive values as hereinafter described), for purposes of a property tax levied by any taxing district, of transportation property at a value which bears a higher ratio to the true market value of such transportation property than the ratio which the assessed value of all other commercial and industrial property in the same assessment jurisdiction bears to the true market value of all such other commercial and industrial property.

(b) The levy or collection of any tax on an assessment which is unlawful under subdivision (a).

(c) The levy or collection of any ad valorem property tax on transportation property at a tax rate higher than the tax rate generally applicable to commercial and industrial property in the same assessment jurisdiction.

(d) The imposition of any other tax which results in discriminatory treatment of a common carrier by railroad subject to this part.

Subsection (2) of § 306 vests the federal district courts with jurisdiction to grant relief necessary to prevent, restrain, or terminate any acts in violation of § 306(1), if the ratio of assessed value to true market value, with respect to transportation property, exceeds by at least five percent the ratio of assessed value to true market value with respect to all other commercial and industrial property in the same assessment jurisdiction.

"Commercial and industrial property" is defined in § 306(3)(c) as "all property, real or personal, other than transportation property and land used primarily for agricultural purposes or primarily for the purpose of growing timber, which is devoted to a commercial or industrial use and which is subject to a property tax levy; . . . ." "Transportation property" is defined in § 306(3)(d) as "transportation property, as defined in regulations of the [Interstate Commerce] Commission, which is owned or used by a common carrier by railroad subject to this part or which is owned by the National Railroad Passenger Corporation."

The parties have stipulated that § 306 was enacted by Congress pursuant to its power to regulate commerce among the states and is thus a valid and constitutional statute.

Plaintiffs contend that defendants have violated § 306 in two respects. First, they allege that the assessment for property taxation purposes of rail transportation property at 16.8 percent of true market value, while locally assessed commercial and industrial property (business property) is assessed for property taxation purposes at only 12.2 percent of true market value, expressly violates § 306(1)(a). Second, plaintiffs allege that the inclusion of their personal property and trade fixtures in the assessed value of their rail transportation property, while personal property and trade fixtures are not included in the assessed value of locally assessed business property, violates the express terms of § 306(1) and

---

1. Public Law 94–210, 90 Stat. 31,54, codified at 49 U.S.C. § 11503. Section 306 was originally codified at 49 U.S.C. § 26c. The Revised Interstate Commerce Act of 1978, Public Law 95–473, 92 Stat. 1337, recodified Subtitle IV of 49 U.S.C. Section 3(a) of the 1978 Revised Act provides that the Revised Act restates, without substantive change, laws enacted before May 16, 1978, and that the recodified Subtitle IV of 49 U.S.C. may not be construed as making a substantive change in the laws replaced. 92 Stat. 1466. The parties agree that the recodification of 49 U.S.C. § 26c at 49 U.S.C. § 11503 substantively changes § 306 of the 4–R Act. The court will therefore refer to and apply § 306 of the 4–R Act as originally enacted throughout this order.

conflicts with the purpose and effect of § 306.[2]

The court notes that § 306 applies to the 1979 tax year. Section 306 did not become effective until February 5, 1979, three years after its enactment. Section 306(2)(b). The actions of defendants claimed to be unlawful, the higher assessment for railroad property than for locally assessed business property, and the inclusion of personal property and trade fixtures in the assessed value of railroad property, took place in August 1979 at the annual meeting of the State Board of Equalization. Section 306 prohibits the assessment, levy, and collection of discriminatory property taxes. The assessment, levy and collection of property taxes for the taxable year 1979 all took place or were to take place after February 5, 1979, and were thus subject to the constraints of § 306. *See Alabama Great Southern Railroad Company v. Eagerton*, 472 F.Supp. 60, 63 (N.D.Ala.1979).

DIFFERENTIAL ASSESSMENT RATIOS

Plaintiffs contend that the assessment for property taxation purposes of their railroad operating property at 16.8 percent of true market value, while locally assessed business property is assessed for property taxation purposes at 12.2 percent of true market value, violates § 306(1)(a) of the 4-R Act.[3] Plaintiffs further contend that the assessment ratio for their property should be reduced to 12.2 percent.

Defendants admit that the different assessment ratios for the two classes of property violate § 306, but they contend that the 1979 assessment ratio on plaintiffs' property should not be reduced to 12.2 percent,

but should only be reduced to 13.29 percent. Defendants' contention is based on the language of § 306(1)(a), which prohibits the assessment of transportation property at a value which bears a higher ratio to the true market value of such transportation property than the ratio which the assessed value of *all other commercial and industrial property* in the same assessment jurisdiction bears to the true market value of *all such other commercial and industrial property*. It is argued that the 12.2 percent figure does not represent the assessment ratio for all other commercial and industrial property in the same assessment jurisdiction, *i. e.*, the State of North Dakota. 12.2 percent is the assessment ratio for locally assessed business real property, which ratio is uniform throughout the state. Centrally assessed commercial and industrial property other than railroad operating property is assessed at 16.8 percent of true market value. Such property includes pipe line companies, electric, gas, heat and water companies, telephone and telegraph companies, and mobile radio communication companies, centrally assessed by the Board pursuant to N.D. Cent.Code ch. 57–06, and also includes airline companies and car line companies, centrally assessed by the Board pursuant to N.D.Cent.Code ch. 57–32. If the assessed value of the property of companies, other than railroads, which is centrally assessed by the Board is included in the commercial and industrial classification, the average percentage of market value at which all other commercial and industrial property in the State of North Dakota was assessed for property taxation purposes for the taxable year 1979 is 13.29 percent. Stipulation of

---

**2.** It appears that the differential treatment for property taxation purposes of railroad property compared with locally assessed business property does not violate the federal constitutional rights of plaintiffs. A state may classify property for taxation purposes, may set up different modes of assessment, valuation, and collection, and may tax some kinds of property at higher rates than others, without violating the due process or equal protection rights of the class of taxpayers receiving differential treatment. *Nashville, Chattanooga & St. Louis Railway v. Browning*, 310 U.S. 362, 368, 60 S.Ct. 968, 971,

84 L.Ed. 1254 (1940). Thus railroads and other utilities may be treated differently than other types of property for property taxation purposes without violating the Fourteenth Amendment. *Id.*

**3.** The ratio of assessed value to true market value of railroad property exceeds the ratio of assessed value to true market value of locally assessed business real property by approximately 38 percent, well in excess of the five percent jurisdictional requirement of § 306(2)(c).

Facts, ¶ 4(f). If the assessed value of car line companies is not included in the commercial and industrial classification, the average percentage of market value at which all other commercial and industrial property in North Dakota was assessed in 1979 is 13.24 percent.[4] Stipulation of Facts, ¶ 4(e).

In arguing that the assessment ratio for railroad operating property should be reduced to 12.2 percent of true market value, plaintiffs rely on § 306(2)(e) of the 4–R Act, which provides as follows:

(e) in the event that the ratio of the assessed value of all other commercial and industrial property in the assessment jurisdiction to the true market value of all such other commercial and industrial property cannot be established through the random-sampling method known as a sales assessment ratio study (conducted in accordance with statistical principles applicable to such studies) to the satisfaction of the court hearing the complaint that transportation property has been or is being assessed or taxed in contravention of the provisions of this section, then the court shall hold unlawful an assessment of such transportation property at a value which bears a higher ratio to the true market value of such transportation property than the assessed value of all other property in the assessment jurisdiction in which is included such taxing district and subject to a property tax levy bears to the true market value of all such other property, and the collection of any ad valorem property tax on such transportation property at a tax rate higher than the tax rate generally applicable to taxable property in the taxing district.

Plaintiffs contend that centrally assessed commercial and industrial property other than railroad operating property may not be considered in determining the average state-wide assessment ratio for all other commercial and industrial property because the assessed value of such property was not determined by means of a sales assessment

ratio study, but was administratively determined by the Board. Because the only commercial and industrial property for which a sales assessment ratio study was conducted is locally assessed business real property, plaintiffs argue that only such property may be considered in determining the assessment ratio for all other commercial and industrial property. In the alternative, plaintiffs argue that because the assessment ratio for *all* commercial and industrial property cannot be determined by means of a sales assessment ratio study, the assessment ratio for their operating property should be reduced to the assessment ratio for all other property in the state, pursuant to the alternative procedure of § 306(2)(e), *supra.* The average statewide percentage of assessed to market value for all taxable property except railroads in North Dakota for 1979 is 8.6198 percent. Letter of Kenneth M. Jakes to Frank Magill, April 14, 1980, Appendix C to plaintiffs' motion for summary judgment.

■ The court concludes that for purposes of § 306(1)(a) of the 4–R Act the assessment ratio of railroad property is to be compared with the average assessment ratio for all other commercial and industrial property for which an assessment ratio can be established to the satisfaction of the court, regardless of whether that ratio was established by means of a sales assessment ratio study. The court will not construe § 306(2)(e) so as to hold that the only means of establishing assessment ratios is by a sales assessment ratio study. The legislative history of § 306 indicates that a sales assessment ratio study is the customary and perhaps preferred method of determining the composite level of assessment, but it does not indicate that such a study is the only method for so determining. If an average assessment ratio for all other commercial and industrial property can be established, relief may be granted under § 306 to the extent the assessment ratio for railroad property exceeds the average as-

---

**4.** The 16.8 percent assessment ratio for railroad property exceeds the 13.24 percent and 13.29 percent figures by 27 and 26 percent respec-

tively, also in excess of the five percent jurisdictional requirement of § 306(2)(c).

sessment ratio for all other commercial and industrial property. *See* S.Rep.No. 1483, 90th Cong., 2d Sess., Appendix C, at 23 (1968).[5]

■ In this case the court holds that defendants have violated § 306(1)(a), and that the ratio of assessed value to true market value of plaintiffs' railroad operating property must be reduced to 13.24 percent. The figure of 13.24 percent is arrived at by including the assessed value of public utilities and airline companies in the commercial and industrial classification and computing an average percentage of market value for all nonrailroad commercial and industrial property, except for car line companies.

Car line companies are excluded from "all other commercial and industrial property" because the property of such companies is used by rail carriers. The Interstate Commerce Commission definition of rail transportation property includes within the definition of rail transportation property equipment held by a carrier under lease or pooling agreements.[6] Car line company property assessed by the Board is therefore "transportation property."

The assessment ratio for centrally assessed commercial and industrial property has not been established by means of a sales assessment ratio study, but it has been es-

---

5. Appendix C to S.Rep.No. 1483 provides in full as follows:

The purpose of the bill is to provide relief for common carriers from discriminatory property taxes whether through assessments or through rates. The test of discrimination as applied to assessments is to show the taxes which are based upon an assessment of the carrier's property at a higher proportion of its true market value than the proportion at which other taxpayers are assessed upon their property in the same taxing district. In making this comparison, the bill contemplates the relationship between a common carrier's property and that of the "average" taxpayer in the taxing district. However, the word "average" has a precise arithmetical connotation which makes it unsuitable in this context.

For simplicity, therefore, the phrase "all other property in the taxing district" has been used as the equivalent of the property of the "average" taxpayer there. Thus the words "all other property" are to be construed as meaning property in the aggregate, and not individually as separate parcels or kinds of property. The reason is obvious since, if the latter were the case, the carrier would be entitled to look for the particular parcel of property in the taxing district which was assessed lowest of all (that is, at a lower percentage of its true market value than the percentage applicable to any other parcel in the entire district) and demand similar treatment. This is not the purpose of the legislation, for such an interpretation would merely remove discrimination against common carriers and substitute discrimination in their favor.

Likewise, it is possible that in a particular taxing district there might be a parcel of property owned by another taxpayer which is assessed at a higher proportion of its true market value than that applied to the carrier's property. In such a case, if it were

necessary to consider each individual parcel of property in applying the bill's standards, it would mean that the carrier would be entitled to no relief, merely because there was one other taxpayer who suffered an even greater discrimination.

Therefore, in order to make possible the fairest comparison—that of the carrier with the hypothetical "average" taxpayer—the unit to be used is that of all parcels of property in the district, considered in the aggregate.

Proof of the composite level of assessment of this property would customarily be submitted by means of the results of a so-called "Sales/assessment ratio test." In such a test, various data—the assessed value, sales price, type of property, and other relevant factors—are recorded from a random selection of parcels or real estate which have been sold in arm's-length sales between willing buyers and willing sellers. From eligible transactions comprising the sample various ratios are computed, with consideration being given to both urban and rural property, and a weighted average is determined and expressed in terms of an assessment ratio, or, in other words, the percentage of true market value at which the property in the sample is assessed. This result can be statistically demonstrated to be accurately representative of the level of assessment of "all other property" in the geographical area (i. e., taxing district) represented by the sample.

It follows, therefore, that a carrier may obtain the relief provided for in the bill by demonstrating that its property is assessed at a higher proportion of its true market value than the proportion at which all other property in the taxing district, in the aggregate, is assessed.

6. *See* I.C.C. Definition of Rail Transportation Property, docket number 36873, Jan. 1, 1979.

tablished to the satisfaction of the court by other means. The parties have stipulated that the assessment ratio for such property is 16.8 percent. The method of assessment is immaterial as long as the level of assessment can be established. A sales assessment ratio study is not itself a method of assessment, but is merely a means of equalizing differing assessments by local assessors to arrive at a uniform assessment ratio for locally assessed property. The same result, a uniform assessment ratio, was achieved for centrally assessed property by administrative determination of the Board. The ratio of assessed value to true market value for *all* other commercial and industrial property has been determined by aggregating the assessed values of locally and centrally assessed property and determining therefrom the average ratio.[7]

Plaintiffs' motion for summary judgment on their claim that the ratio of assessed to market value of their property is unlawful under § 306(1)(a) of the 4–R Act will be granted insofar as the ratio exceeds 13.24 percent.

## INCLUSION OF TRANSPORTATION PERSONAL PROPERTY IN ASSESSED VALUE

Plaintiffs contend that the inclusion of personal property and trade fixtures in the assessed value of their operating property, while the personal property of locally assessed businesses is exempt from ad valorem property taxation, violates § 306 of the 4–R Act. Defendants contend that § 306 does not deny to the state the power to classify property and to exempt certain classes of property from taxation.

The inclusion of personal property and trade fixtures in the assessed value of railroad property does not violate § 306(1)(a), (b) or (c). Subsection (1)(a) prohibits a higher ratio of assessed value to true market value for transportation property than for all other commercial and industrial property. The inclusion of personal property in the assessed value of railroad property affects the total assessed value of the railroad property, but it does not affect the assessment ratio. Because the inclusion of personal property does not violate § 306(1)(a), a levy or collection of an assessed tax would not violate § 306(1)(b) merely because of the inclusion of personal property.

Subsection (1)(c) prohibits the levy or collection of any property tax on transportation property at a tax rate higher than the tax rate generally applicable to commercial and industrial property. Plaintiffs contend that subsection (1)(c) has been violated by the inclusion of personal property in the assessed value of their property because the personal property of locally assessed businesses, being exempt from taxation, is taxed at a rate of zero percent. However, the personal property of locally assessed businesses is not commercial and industrial property for purposes of § 301(1)(c), for § 306(3)(c) defines commercial and industrial property as property devoted to a commercial or industrial use and *which is subject to a property tax levy.* Locally assessed business real property is commercial and industrial property for purposes of § 306, but business personal property is not because it is not subject to a property tax levy. Transportation personal property cannot, therefore, be compared with business personal property in determining

**7.** Plaintiffs contend it is inappropriate to add the assessed value of centrally assessed properties to achieve a composite ratio because the composite would include value attributable to personal property. It is alleged that the resulting ratio would not be comparable with the real property which is the basis for the comparison. This argument is without merit. The comparison to be made is with all other commercial and industrial property for which an assessment ratio can be established to the satisfaction of the court. Commercial and industrial property includes personal property, if it is subject to a property tax levy. Section 306(3)(c). Centrally assessed commercial and industrial personal property is subject to a property tax levy, so it is properly considered when determining the composite ratio of assessed to market value. Because the personal property of locally assessed businesses is not subject to a property tax levy, it is not commercial and industrial property for purposes of § 306 and may not be considered when determining the composite ratio.

whether § 306(1)(c) has been violated. Plaintiffs do not contend that the tax rate applied to their property is higher than that applied to business real estate. There has therefore been no violation of § 306(1)(c).

Section 306(1)(d) prohibits the imposition of any other tax which results in discriminatory treatment of a common carrier by railroad. Defendants contend that because subsections (1)(a), (b) and (c) relate to ad valorem assessment and taxation of property, the "any other tax" referred to in subsection (1)(d) does not refer to an ad valorem tax. If defendants are correct, the inclusion of personal property in the assessed value of railroad property, which is really the imposition of a personal property tax, does not violate § 306(1)(d).

The court does not agree with defendants' interpretation of § 306(1)(d). The phrase "any other tax" obviously means a tax not referred to in subsections (1)(b) or (c) and for the reasons previously set out in this opinion the court holds that the additional tax paid by the railroad arising out of the inclusion of personal property in the total assessed value of railroad property is not a tax referred to in subsections (1)(b) or (1)(c). Because including personal property does not affect the assessment ratio referred to in subsection (1)(a), subsection (1)(b) is inapplicable. Because the same tax rate is applied to transportation property as applied to other "commercial and industrial property" (as that term is defined by § 306(3)(c)), subsection (1)(c) is inapplicable. The personal property tax imposed on railroads is therefore encompassed within the term "any other tax" and if its imposition is discriminatory, it is unlawful and prohibited by § 306(1)(d).

■ Section 306(1)(d) broadly prohibits the imposition of any tax which results in discriminatory treatment of railroads. It is therefore necessary to look at taxation of all classes of property to determine whether discrimination against railroad property exists.

The legislative history of § 306 is of some assistance in making this determination. The first legislative study of discriminatory property tax treatment of railroads, S.Rep.No. 445, 87th Cong., 1st Sess. (1961) (the Doyle Report), did not discuss personal property taxation. The report was concerned with real property tax discrimination among carriers and concluded, id. at 445–465, that because property taxes were levied on railroad and pipe line rights-of-way, those carriers were overtaxed when compared to motor, air and water carriers not subject to rights-of-way taxation.

By 1968, however, the drafters of what is now § 306 were primarily concerned with discriminatory property tax treatment of railroads compared to all other classes of property.

As the opening witness for the railroads explained, subparagraph (c) of S. 927 [substantially similar to § 306] is not intended to abrogate the right of a State to establish separate rates for the different traditional classes of property. That is, the language of subparagraph (c) is not intended to interfere with the classification of property by a State for rate purposes into the traditional breakdown of real property, tangible personal property, and intangible property, provided that carrier transportation real property is taxed at no higher rate than other real property; that carrier transportation personal property is taxed at no higher rate than other personal property; and, that carrier transportation intangibles are taxed at no higher rate than other intangible property.

S.Rep.No. 1483, 90th Cong., 2d Sess., at 10–11 (1968). The same report also states that the proposed legislation "is not intended to interfere or restrict State action in extending total or partial exemption to property of a class, such as churches, charitable institutions, homesteads, and the like." Id. at 11.

The intent of Congress in enacting § 306 was to protect interstate rail carriers from discriminatory property taxation. The most obvious form of tax discrimination is to impose a tax on a class of rail transportation property that is not imposed on other nonrailroad property of the same class.

The inclusion of personal property in the assessed value of railroad property and other centrally assessed businesses imposes a personal property tax on centrally assessed businesses that is not imposed on locally assessed businesses.

■ The court therefore concludes that defendants have violated § 306(1)(d) by including personal property in the assessed value of plaintiffs' property. Such inclusion results in the imposition of a personal property tax on railroads that is not imposed on locally assessed businesses. The imposition of such a tax is discriminatory when railroad property is compared to all other property as a whole, excluding traditionally exempt property of churches, charitable institutions, homesteads and the like. The imposition of a personal property tax on other centrally assessed businesses does not render defendants' actions toward plaintiffs nondiscriminatory. As stated *supra*, the emphasis of Congress was on discrimination among all forms of property, not just among carriers or public utilities. Furthermore, discrimination against one business or person cannot be justified merely because others are also the victims of discrimination. Section 306 requires that if personal property of locally assessed businesses is to be exempt from ad valorem taxation the personal property of railroads must also be exempt.

### ORDER

On the cross motions of the parties for summary judgment, IT IS ORDERED that judgment be entered declaring that Section 306 of the Railroad Revitalization and Regulatory Reform Act of 1976 requires that plaintiffs' personal property including trade fixtures be excluded from defendants' 1979 valuation of plaintiffs' property for taxation purposes and that the remainder of plaintiffs' property be assessed at a ratio not to exceed 13.24 percent of true market value.

IT IS FURTHER ORDERED that the court will retain jurisdiction of the case and counsel for plaintiffs and defendants will confer and recommend to the court the proper distribution under the judgment of this court, and the method of distribution, of disputed tax monies deposited with this court pursuant to its order of February 21, 1980.