**ACF INDUSTRIES, INCORPORATED,** Evans Railcar Leasing Company; Fruit Growers Express Company; General American Transportation Corporation; North American Car Corporation; Pullman Leasing Company; Railbox Company; Railgon Company; Trailer Train Company; Union Tank Car Company; and United Equipment Leasing Associates, **Plaintiffs,**

v.

The **STATE OF ARIZONA** and Arizona Department of Revenue, **Defendants.**

**No. CIV 82–59 PHX VAC.**

United States District Court, D. Arizona.

June 4, 1982.

David Wm. West, Harold J. Bliss, Jr., Phoenix, Ariz., for plaintiffs.

Anthony B. Ching, Sol. Gen., Toni McClory, Asst. Atty. Gen. State of Ariz., Phoenix, Ariz., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

CORDOVA, District Judge.

The Court, having considered the legal memoranda and affidavits submitted by the parties, the oral arguments made on January 14, 1982, March 29, 1982 and April 7, 1982, and the evidence presented at the evidentiary hearing on April 8, 1982, makes and enters the following findings of fact and conclusions of law:

### FINDINGS OF FACT

1. On January 13, 1982, plaintiffs commenced this action to challenge the 1981 taxes levied by defendants, alleging that

the Arizona laws under which such taxes were assessed discriminated against plaintiffs in violation of the Railroad Revitalization and Regulatory Reform Act of 1976 (4R Act). 49 U.S.C. § 11503.

2. Plaintiffs are private car companies who operate, furnish or lease rail cars used in part in the State of Arizona.

3. Defendants are the State of Arizona ("the State") and the Arizona Department of Revenue ("the Department") which under state law is responsible for assessing, levying and collecting the annual taxes due from plaintiffs pursuant to Ariz.Rev.Stat. § 42–746.

4. Arizona classifies property into separate classes for taxation purposes and determines the assessed valuation of the property in each class according to assessment percentages fixed by statute. Ariz.Rev. Stat. §§ 42–136, 227.

5. Ariz.Rev.Stat. § 42–136(7) defines "class 7" property as:

(a) All real and personal property of railroad companies used in the continuous operation of railroads valued under chapter 4, article 4 of this title.

(b) All real and personal property used in the operation of private car companies valued under chapter 4, article 3 of this title.

6. Arizona law directs that the Director of the Arizona Department of Revenue annually determine the assessment percentages applicable to class 7 property according to the formula set forth in Ariz.Rev. Stat. § 42–227(B)(7). That statute reads in pertinent part:

. . . the director shall annually determine percentages equal to the ratios which:
(i) The total assessed valuation for secondary tax purposes of all property in classes 1, 2 and 3 bears to the total full cash value of such property and such ratio shall be used for secondary tax purposes as required by federal law.
(ii) The total assessed valuation of all property for primary tax purposes in classes 1, 2 and 3 bears to the total limited valuation used for primary tax pur-

poses of such property and such ratio shall be used for primary tax purposes as required by federal law.

7. "Class 1" property includes flight property, the property of producing mines and mining claims, and standing timber. In the year 1981, such property was assessed at 52% of full cash value. "Class 2" property includes the property of telephone and telegraph companies; gas, water and electric utility companies; and pipeline companies. In the year 1981, such property was assessed at 44% of full cash value. "Class 3" property includes all real and personal property devoted to a commercial or industrial use that is not included in classes 1, 2, 4, 5(b), 5(c), 6 or 7. In 1981, such property was assessed at 25% of full cash value. Ariz.Rev.Stat. §§ 42–136, 227.

8. The Department followed the statutory formula mandated by Ariz.Rev.Stat. § 42–227(7) and determined the 1981 assessment percentages for class 7 property to be 36% for primary tax purposes and 35% for secondary tax purposes.

9. On December 10, 1981, the Department mailed to each plaintiff a "1981 Private Car Company Tax Statement" which set forth the 36% and 35% assessment percentages as well as the total amount of primary and secondary taxes owed by each plaintiff for the 1981 year.

10. Under the 4R Act a state is prohibited from assessing "rail transportation property at a value that has a higher ratio to the true market value of the rail transportation property than the ratio that the assessed value of other commercial and industrial property in the same assessment jurisdiction has to the true market value of the other commercial and industrial property." 49 U.S.C. § 11503(b)(1).

11. Section 11503(c) provides in part that: "Relief may be granted under this subsection only if the ratio of assessed value to true market value of rail transportation property exceeds by at least 5 percent, the ratio of assessed value to true market value of other commercial and industrial property in the same assessment jurisdiction."

12. The term "commercial and industrial property" is defined in the 4R Act as "property, other than transportation property and land used primarily for agricultural purposes or timber growing, devoted to a commercial or industrial use and subject to a property tax levy." 49 U.S.C. § 11503(a)(4).

13. To determine the assessment ratio of other commercial and industrial property, defendants used a weighted mean derived from the aggregate of all property in classes 1, 2 and 3.

14. Plaintiffs failed to introduce in evidence any sales ratio study of Arizona property valuations, and formally abandoned any factual challenge relating to the manner in which the defendants determined the full cash (true market) and assessed valuations for individual properties within the State. The individual property valuations determined by defendants and used in computing the assessment ratio for class 7 property are therefore presumed to be correct.

15. Plaintiffs' 1981 taxes were due and payable on December 15, 1981, and delinquent on January 15, 1982. Ariz.Rev.Stat. § 42–746.

16. On January 13, 1982, plaintiffs filed the complaint and served upon defendants a notice of hearing on plaintiffs' motion for temporary restraining order.

17. On January 14, 1982, oral argument was held on plaintiffs' application for a temporary restraining order and on that same day, a restraining order was entered against defendants, restraining them from collecting or attempting to collect any taxes from plaintiffs in excess of a tax computed on the basis of an assessment ratio of 18.17%.

18. On January 15, 1982, plaintiffs paid to the Department a portion of the taxes levied by the Department based upon the above assessment ratio of 18.17%. On January 25, 1982, plaintiffs posted a bond with the Court in the amount of $273,000.00.

19. Following oral argument on April 7, 1982, the Court dissolved the temporary restraining order previously issued against defendants. An evidentiary hearing was held on April 8, 1982.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction of this matter pursuant to 49 U.S.C. § 11503(c).

2. Plaintiffs are "private car companies" as defined in Ariz.Rev.Stat. § 42–741, and operate, furnish or lease "class 7" personal property as defined in Ariz.Rev.Stat. § 42–136(7).

3. In determining the assessment percentages applicable to class 7 property for the year 1981, the Department fully complied with the requirements of state law.

4. Plaintiffs operate, furnish or lease "rail transportation property" as the term is defined and used in the 4R Act.

5. The term "commercial and industrial property" as defined and used in the 4R Act includes the property in classes 1, 2 and 3 under Ariz.Rev.Stat. § 42–136.

6. The term "commercial and industrial property" as defined in the 4R Act does not include "land used primarily for agricultural purposes or timber growing." 49 U.S.C. § 11503(a)(4). Since this language encompasses only "land" and not timber itself, the term "commercial and industrial property" as defined and used in the 4R Act includes standing timber which is within class 1 pursuant to Ariz.Rev.Stat. § 42–136.

7. The term "commercial and industrial property" as defined in the 4R Act includes only property which is "devoted to a commercial or industrial use." 49 U.S.C. § 11503(a)(4). Given its natural meaning, this language focuses on the ultimate use of the property, regardless of whether the property produces income for its owner. Thus, the term "commercial and industrial property" as defined and used in the 4R Act does not include leased or rented residential property which Arizona classifies separately in class 6 pursuant to Ariz.Rev.Stat. § 42–136.

8. The term "commercial and industrial property" as defined in the 4R Act includes only property which is "subject to a property tax levy." 49 U.S.C. § 11503(a)(4). Pur-

suant to the Arizona Constitution, business inventory is not subject to a property tax levy. Ariz. Const. Art. IX, §§ 2, 13. Thus, the term "commercial and industrial property" as defined and used in the 4R Act does not include inventory which is not subject to a property tax levy in Arizona. *See Ogilvie v. State Bd. of Equalization,* 492 F.Supp. 446, 453–54 (D.N.D.1980), *aff'd,* 657 F.2d 204 (8th Cir.1981).

■ 9. Defendants' use of limited valuations in the determination of the 1981 class 7 primary tax assessment percentage did not violate the 4R Act.

10. The valuation data used by the Department to determine the 1981 assessment percentages applicable to class 7 property was the correct and appropriate data.

■ 11. In determining the assessment percentages applicable to class 7 property for the year 1981, defendants' use of 1981 assessment percentages, rather than 1982 assessment percentages under Ariz.Rev. Stat. § 42–227, did not violate the 4R Act.

12. Since plaintiffs have formally abandoned any factual challenge to the valuation process of defendants, this case does not involve issues typically raised in a *"de facto"* case. Rather this is a *"de jure"* case involving alleged discrimination as a result of the Arizona statutory scheme. *See Clinchfield R.R. Co. v. Lynch,* 527 F.Supp. 784, 785 n. 5 (E.D.N.C.1981).

■ 13. Plaintiffs failed to establish that there is any legal basis for distinguishing between centrally assessed and locally assessed property for purposes of determining what is "commercial and industrial property" in a *de jure* case. *See Ogilvie v. State Bd. of Equalization, supra,* 657 F.2d at 209; *Clinchfield R.R. Co. v. Lynch, supra,* 527 F.Supp. at 787.

■ 14. In a *de facto* case it appears that the median is the preferred average used in conducting a sales assessment ratio study. *See Clinchfield R.R. Co. v. Lynch, supra,* 527 F.Supp. at 789; *see also Louisville & Nashville R.R. Co. v. Public Service Comm'n of Tenn.,* 493 F.Supp. 162, 164

(M.D.Tenn.1978). In a *de jure* case such as this, however, the Court concludes that the "hypothetical 'average' taxpayer" is more appropriately selected by reference to a weighted mean than a median. *Arizona v. Atchison, Topeka & Santa Fe R.R. Co.,* 656 F.2d 398, 404 (9th Cir.1981), *quoting,* S.Rep. No. 91–630, 91st Cong., 1st Sess. 10 (1969). Thus, defendants' use of a weighted mean derived from the aggregate of all property in classes 1, 2 and 3 to determine the average assessment ratio of other commercial and industrial property was in accordance with the requirements of the 4R Act.

15. Neither a sales assessment ratio study nor the alternative method of proving valuation discrimination is implicated in this *de jure* case. Accordingly, it is not necessary to resolve the issue of whether the codified version, 49 U.S.C. § 11503(c)(1), or the original version, Act of Feb. 5, 1976, Pub.L. No. 94–210, § 306(2)(e), 90 Stat. 31, 54–55, *reprinted* in [1976] U.S.Code Cong. & Ad.News 14, of the alternative test should be applied. *Compare Arizona v. Atchison, Topeka & Santa Fe R.R. Co., supra,* 656 F.2d at 404, 410, *with e.g., Alabama Great Southern R.R. Co. v. Eagerton,* 663 F.2d 1036, 1037 (11th Cir.1981).

■ 16. Plaintiffs failed to establish any violation of the 4R Act by defendants resulting in the assessment of plaintiffs' property at a ratio which exceeds by five percent the ratio of assessed value to true market value of other commercial and industrial property in the State.

17. Defendants are entitled to the full amount of taxes levied by the Department, plus an additional 12 percent per annum interest on the unpaid balance accruing pursuant to Ariz.Rev.Stat. § 42–747 from January 15, 1982 for each subsequent month in which the tax remains unpaid.

18. Any of the foregoing findings of fact which are more properly conclusions of law shall be deemed conclusions of law; and any of the foregoing conclusions of law which are more properly findings of fact shall be deemed findings of fact.