The **BURLINGTON NORTHERN RAIL-ROAD COMPANY, Plaintiff,**

v.

**Gerald D. BAIR, Director of the Department of Revenue of Iowa, Defendant.**

**Civ. No. 83–100–A.**

United States District Court, S.D. Iowa, C.D.

April 20, 1984.

James W. McBride, Washington, D.C., Stephen D. Goodwin, Laughlin, Halle, Clark, Gibson & McBride, Memphis Tenn., Richard Malm and F. Richard Lyford, Dickinson, Throckmorton, Parker, Mannheimer & Raife, Des Moines, Iowa, for plaintiff.

Mark R. Schuling, Asst. Atty. Gen., Des Moines, Iowa, for the State of Iowa.

Charles H. Haack, Iowa Dept. of Revenue, Des Moines, Iowa, for defendant.

### RULING AND ORDER ON PERSONAL PROPERTY TAXATION ISSUE

STUART, Chief Judge.

Plaintiff filed this action alleging that the State of Iowa's personal property tax system discriminated against plaintiff in two ways, thus violating Section 306 of the Railroad Revitalization and Regulatory Reform Act of 1976, Pub.L. 94–210 § 306, 90 Stat. 31, 54–55, 94th Cong., 2d Sess., *reprinted in* [1976] U.S.Code Cong. & Ad. News. 14, 180–81 [hereinafter "Section 306"].[1] Plaintiff contends: (1) that in tax

---

**1.** Section 306 is currently codified, with minor amendments, at 49 U.S.C. § 11503. The minor

years 1979, 1980, 1981, and 1982, the State of Iowa assessed and collected or sought to collect tax payments on plaintiff's personal property while effectively allowing nearly all other personal property owners to exempt their commercial and industrial personalty from *ad valorem* taxation; (2) that in tax years 1981 and 1982, the State of Iowa assessed all of plaintiff's property in Iowa at a level well-above its true market value; and (3) that for tax years 1981 and 1982, the State of Iowa assessed all commercial and industrial property locally-assessed in Iowa at a level that is much lower than the level at which plaintiff's property was assessed.

On April 4, 1983, the Court preliminarily enjoined defendant from collecting more than fifty percent of the *ad valorem* tax payments assessed against plaintiff for the second half of tax year 1981. The parties agreed to a similar injunctive order for subsequent taxes.

The third contention ((3), *supra*) was severed from the first two contentions. The trial on the first two issues was held from December 12 to December 16, 1983. The Court ordered posttrial briefing, which was completed March 5, 1984.

Although the first issue is not complicated, the second issue involves complex tax-assessment and tax-accounting questions. In the interest of allowing the parties to know of the Court's determinations as soon as possible, the Court has decided that it should issue its ruling on the first issue and, subsequently, issue a separate ruling on the second issue. Initially, the Court must address a contention raised by defendant before trial by motion to dismiss.

I. Defendant's Motion to Dismiss Plaintiff's Request for Tax Payment Refunds.

█ Plaintiff paid its property taxes to the State of Iowa for tax years 1979 and 1980 without protest. The first half of tax year 1981 was paid before filing this action under protest. Plaintiff now requests the Court to order defendant to refund that portion of its 1979, 1980, and first-half 1981 property tax payments which is allocable to personal property. The Court finds that it is not within the Court's power to order refunds of any taxes paid to the State before the filing of a Section 306 action.

A. The language of Section 306 does not provide for tax payment refunds.

Section 306(2) provides that United States district courts have jurisdiction to grant mandatory or prohibitive injunctive relief as is necessary to prevent, restrain, or terminate acts in violation of Section 306(1). The acts proscribed by Section 306(1) are the assessment, levy, or collection of a discriminatory property tax, or the imposition of any other type of discriminatory tax. Plaintiff argues that a reasonable interpretation of the word "terminate" should result in a determination that United States district courts are vested with authority to order refunds of taxes paid before the filing of a federal action.

The Court finds that the language of sections 306(1) and 306(2), when read *in pari materia* and in light of 28 U.S.C. § 1341, evince an intent on Congress's part to allow the United States district courts to halt any state acts that would result in the state attaining payments through the implementation of a tax system that discriminates against transportation property owners. The language is, therefore, intended to provide for relief from acts that are imminent or are likely to recur, and not retrospective relief. *Atchison, Topeka, & Santa Fe Ry. v. Lennen*, 531 F.Supp. 220, 237 (D.Kan.1981).

B. Principles of comity mandate a narrow construction of the relief provision of Section 306.

The United States Supreme Court has recently re-enunciated the long-standing

---

amendments included in the codified version are not to be construed as making a substantive change to Section 306. Revised Interstate Commerce Act of 1978, Pub.L. 95–473, 92 Stat. 1337, 1466,·95th Cong.2d Sess., *codified at* 49 U.S.C.

Subtitle IV. The parties have stipulated that the language of Section 306 shall govern in circumstances in which there is a conflict between Section 306 and 49 U.S.C. § 11503. Pretrial Stipulation, paragraph 2.

doctrine that federal courts exercise extraordinary restraint in adjudicating actions that would affect state tax affairs. Equitable restraint in state tax matters is "particularly appropriate because of the delicate balance between federal authority and state governments, and the concomitant respect that should be accorded state tax laws in federal courts." Fair Assessment in Real Estate Ass'n v. McNary, 454 U.S. 100, 107–09 (1981). Congress was clear in excepting Section 306 from the broad ban of the Tax Injunction Act, 28 U.S.C. § 1341. Section 306(2). However, in light of the equitable restraint doctrine, the Court concludes that the exception of Section 306(2) must be given a narrow construction. Any ambiguity in the word "terminate," therefore, will not be interpreted as an indication that federal district courts may open state coffers to plaintiff railroads seeking refunds of past tax payments. Only prospective relief should be allowed.

C. The Eleventh Amendment bars retrospective relief recovery.

■ The Eleventh Amendment[2] mandates that a federal court cannot assert jurisdiction over a suit by a private party seeking to impose a liability that must be paid from public funds in the state treasury. *Edelman v. Jordan*, 415 U.S. 651, 663, 94 S.Ct. 1347, 1355, 39 L.Ed.2d 662 (1974). Congress may in certain circumstances abrogate states' Eleventh Amendment immunity from suit in federal court by enacting legislation pursuant to the Commerce Clause. *Parden v. Terminal Ry.*, 377 U.S. 184, 190–98, 84 S.Ct. 1207, 1211–1216, 12 L.Ed.2d 233 (1964). Congressional abrogation, however, is not to be inferred; it must be clear from the language of the law enacted. *Employees of the Dept. of Public Health & Welfare v. Department of Public Health & Welfare*, 411 U.S. 279, 283–87, 93 S.Ct. 1614, 1617–1619, 36 L.Ed.2d 251 (1973); *see Fitzpatrick v. Bitzer*, 427 U.S. 445, 452, 96 S.Ct.

2666, 2669, 49 L.Ed.2d 614 (1976); *Parden, supra* 377 U.S. at 187–90, 84 S.Ct. at 1210–1211; Tribe, Intergovernmental Immunities in Litigation, Taxation, & Regulation: Separation of Powers Issues in Controversies about Federalism, 89 Harv.L.Rev. 682, 691 (1976). Section 306 does not clearly vest federal district courts with the authority to force states to refund tax payments once made. Thus, the Court concludes that it would be in violation of the Eleventh Amendment were it to order the State of Iowa to make the refund of tax payments requested by plaintiff.

In summary, the most reasonable interpretation of Section 306 does not permit the Court to direct defendant to refund the taxes plaintiff paid before filing this action. Furthermore, the Court is barred by the Eleventh Amendment from ordering defendant to make the refund. Accordingly defendant's motion to dismiss will be granted. Plaintiff's request for refund of any portion of its taxes paid before filing this action will be denied.

II. The Personal Property Taxation Issue.

Plaintiff's contention that the State of Iowa assessed and sought to collect tax payments on plaintiff's personal property while allowing nearly all other personal property owners to exempt their personalty from taxation, in the second half of tax year 1981 and in tax year 1982, is now ready for ruling. This Court has jurisdiction over the personal property taxation issue under Section 306; 28 U.S.C. § 1337, as the issue arises from an act of Congress regulating interstate commerce; and 28 U.S.C. § 1331.

A. Section 306

The Eighty-sixth Congress requested a national transportation policy study. A preliminary draft was presented to the Eighty-seventh Congress in 1961. One of the conclusions drawn from the study was

---

**2.** The Eleventh Amendment reads:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted

against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

that property taxation in many states had, for many years, operated in a fashion inherently discriminatory against the railroads. Fifteen years later in 1976, Congress passed Section 306.[3]

Section 306 prohibits states from committing any of the following acts:

"(a) The assessment ..., for purposes of a property tax levied by any taxing district, of transportation property at a value which bears a higher ratio to the true market value of such transportation property than the ratio which the assessed value of all other commercial and industrial property in the same assessment jurisdiction bears to the true market value of all such other commercial and industrial property.

"(b) The levy or collection of any tax on an assessment which is unlawful under subdivision (a).

"(c) The levy or collection of any ad valorem property tax on transportation property at a tax rate higher than the tax rate generally applicable to commercial and industrial property in the same assessment jurisdiction.

"(d) The imposition of any other tax which results in discriminatory treatment of a common carrier by railroad subject to this part."

Section 306(1). The purpose of Section 306 is to remedy discriminatory taxation against railroads. *Ogilvie v. State Bd. of Equalization*, 657 F.2d 204, 207 (8th Cir.), *cert. denied*, 454 U.S. 1086, 102 S.Ct. 644, 70 L.Ed.2d 621 (1981). Section 306 is directed toward both state real and personal property, and remedies under Section 306 should be tailored to eliminate discrimination in both categories. *Clinchfield R.R. v. Lynch*, 700 F.2d 126, 129 (4th Cir.1983).

B. The Relevant Portion of Iowa's Tax System.

In Iowa, as in most states, railroads' operating property is valued for property tax purposes as a unit. Under the unit concept of value, the fair market value of railroad operating property is measured by appraising the whole property as a going concern because it derives its true value not from the sum of its parts, but from the integrated use of the parts to carry traffic, render public service and, from the investors standpoint, generate income. The various states in which a particular railroad operates have various statutory formulas under which a portion of the value of the unit is allocated to that state. Under the Code of Iowa all real and tangible personal property subject to taxation in Iowa, including rail transportation property, is to be valued at its "actual value" and shall be assessed at 100% of its actual value. Actual value is defined as the fair and reasonable market value or the fair and reasonable exchange in the year in which the property is listed and valued between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and each being familiar with all the facts relating to the particular property. The parties have stipulated that "actual value" as used in Iowa Code § 434.15, and "true market value," as used in Section 306, are synonymous. Pretrial Stipulation, paragraph 9.

In 1973 Iowa embarked on a program to reduce and eventually eliminate taxation of personal property for all but a few commercial and industrial personal property owners. Under Iowa Code § 427A.11, local tax assessors reduce the assessed value of each taxpayer's personal property so that the total assessed value of all personal property in the assessing jurisdiction does not exceed the total actual value of personal property in that jurisdiction as of January 1, 1973, excluding livestock. This statutory scheme will be referred to as the "rollback" provision.

Section 427A.2, Code of Iowa, allows a credit, not to exceed $10,000, against the rolled-back, assessed value of tangible personal property owned by persons and busi-

---

**3.** For a more complete review of the history see *Clinchfield R.R. v. Lynch*, 700 F.2d 126, 128 n. 1 (4th Cir.1983), and *Ogilvie v. State Bd. of Equali-*
*zation*, 657 F.2d 204, 206–07 (8th Cir.), *cert. denied*, 454 U.S. 1086, 102 S.Ct. 644, 70 L.Ed.2d 621 (1981).

ness enterprises. In addition, under Iowa Code § 427A.9, each locally-assessed personal property taxpayer is granted an additional personal property tax credit which increases in relation to the growth of state general fund revenues. The general fund revenues are intended to replace, at least in part, the revenues in the local jurisdiction that have been lost as a result of the decreased personal property tax. Both the Section 427A.2 and 427A.9 tax "credits" are more properly termed tax "exemptions" because they serve to reduce the valuation figure to which the tax rate is applied. They are not credits against the tax.

The Iowa personal property tax plan calls for an increase in the statutory exemption in nine phases. After the ninth phase is implemented, all state tax on personal property *taxed as personal property* will have been eliminated. The personal property tax plan is currently in its fourth phase.

Certain property that would commonly be characterized as "personal property" is statutorily designated to be "real property" under the Iowa tax system. Iowa Code § 427A.1. Thus, as stipulated by the parties, all tangible commercial and industrial personalty owners are benefitted by the rollback and exemption provisions, except those owners of personalty excluded by Iowa Code § 427A.1. The types of personalty excluded from the benefits of the rollback and exemption provisions are: (1) all property commonly characterized as personalty owned by public service companies that are centrally assessed by the Department of Revenue (including railroads); (2) machinery used in manufacturing; (3) computers; and (4) transmission towers and antennae. Thus, it will be necessary to classify personalty affected by the rollback and exemption provisions as "exempt personal property," and personalty excluded by Section 427A.1 as "non-exempt".

The benefits from which owners of non-exempt personal property are excluded are significant. The rollback provision has resulted in an assessed value of exempt personal property that is considerably less than its true market value. As a result of the rollback provision, the assessed value of exempt personal property was reduced by 63% in tax year 1981 and by 67% in tax year 1982. The exemption provisions, taken cumulatively, have served to further reduce the tax valuation figure for owners of exempt personal property by an additional $175,000 for tax years 1981 and 1982.

C. Segregation of plaintiff's personal property.

The primary issue in this action is whether the Court may consider plaintiff's evidence tending to show that over one-half of the value of plaintiff's property, allocated to Iowa, represents value of property of a type commonly characterized as personal property. The parties have stipulated to the portion of plaintiff's unit value that is properly allocated to Iowa. Defendant, however, argues that plaintiff's property, as allocated to Iowa under the unit value concept, must be considered by the Court to be inseparable. Thus, defendant contends that all plaintiff's property can be compared only in the aggregate to all other commercial and industrial property, both real and personal. Accordingly, defendant presented no evidence of what portion of plaintiff's property allocated to Iowa is of a type commonly characterized as personalty.

Plaintiff presented evidence to show that, for tax years 1981 and 1982, between fifty-one and fifty-four percent of plaintiff's property allocable to Iowa is of a type commonly characterized as personalty. This evidence was derived by two expert witnesses called by plaintiff. Mr. Steven L. Wood submitted an affidavit and testified on the basis of an analysis of plaintiff's annual reports to the Interstate Commerce Commission [hereinafter "I.C.C."]. By segregating the book values (in the accounts in each I.C.C. report) that were representative of the value of property commonly characterized as either "personal" or "real", Mr. Wood testified that in tax years 1981 and 1982, the portion of plaintiff's Iowa property that was personalty was 53.80% and 53.12%, respectively.

Dr. Arthur A. Schoenwald testified at trial on the basis of a mode of segregating railroad personal and real property that he had done in Minnesota. Dr. Schoenwald also testified that his analysis was of a type commonly used in North Dakota and Illinois to segregate railroad personalty from realty. Based on the book values of the various accounts in the I.C.C. annual reports, Dr. Schoenwald determined the portion of plaintiff's unit value allocable to Iowa that is commonly characterized as personal property. The results of Dr. Schoenwald's calculations were that in tax years 1981 and 1982, the portion of plaintiff's unit value allocable to Iowa that was personalty was 54% and 53%, respectively.

The Court finds that the analysis of Mr. Wood and Dr. Schoenwald are valid and reliable methods of determining approximately the portion of plaintiff's unit value allocable to Iowa that represents property of a type that is commonly classified as personal property. The results of Dr. Schoenwald's calculations were subject to fluctuation, depending on the type of depreciation method used or the values given certain types of property. However, the depreciation-method used by Dr. Schoenwald is that commonly used in calculating real-personal property splits, and the values given were not shown to be unreasonable under current circumstances and accepted tax-accounting standards. Although there is no clear relationship between book value and actual value, the difficulty of precisely determining the actual value of real and personal property valued as a unit, should not be a barrier to the implementation of Section 306. Thus, the Court will accept the personal property "breakout" method and calculations by plaintiff, without significant amendment.

4. The Court realizes that some classification systems may have such minor discriminatory impact on transportation property owners that they would not violate Section 306. The Iowa personal property tax plan, however, affecting such a large portion of property in Iowa and designed to exempt select types of personalty from taxation, is not of that sort.

In addition, the Court does not imply that transportation property should be compared to

The issue remains whether it is appropriate under Section 306 to distinguish personal from real property. Defendant cites no legal authority to support his contention that plaintiff's property is inseparable. Plaintiff relies on caselaw from the courts of appeal for the Eighth and Fourth Circuits to support its contention that drawing the distinction is proper in circumstances in which a party proves the distinction with valid and reliable evidence. *Ogilvie v. State Bd. of Equalization,* 492 F.Supp. 446, 454 (D.N.D.1980) (citing legislative history distinguishing personal and real property), *aff'd,* 657 F.2d 204, 208 (8th Cir.), *cert. denied,* 454 U.S. 1086, 102 S.Ct. 644, 70 L.Ed.2d 621 (1981); *Clinchfield R.R. v. Lynch,* 700 F.2d 126, 133–34 (4th Cir.1983) (indicating that personal and real property should be distinguished).

The purpose of Section 306 could be thwarted were federal courts to accept the argument that defendant raises. The facts in this case provide an appropriate example. The obvious discrimination resulting from Iowa's rollback and exemption statutes could not be remedied.[4] Furthermore, the discrimination, albeit blatant, may not rise to the five-percent limit set by Section 306(2)(c) in all circumstances. In circumstances in which transportation property taxation discrimination is designed as part of the statutory tax system itself, federal courts have held that the five-percent limit should not be construed to vitiate the clear intent of Congress in enacting Section 306. *Trailer Train Co. v. State Bd. of Equalization,* 697 F.2d 860, 866 (9th Cir.1983); *Burlington Northern R.R. v. Department of Revenue,* 570 F.Supp. 585, 595 (W.D. Wis.1983).

types of property that are traditionally tax-exempt, such as property owned by churches and charitable institutions, and homesteads. *Ogilvie v. State Bd. of Equalization,* 492 F.Supp. 446, 455 (D.N.D.1980), *aff'd,* 657 F.2d 204 (8th Cir.), *cert. denied,* 454 U.S. 1086, 102 S.Ct. 644, 70 L.Ed.2d 621 (1981). Again, however, the facts do not present that sort of comparison.

■ Because there is precedent supporting the segregation of real from personal transportation property in Section 306 analysis, and policy reasons for doing so in circumstances in which de jure [5] discrimination is alleged, the Court concludes that plaintiff's "breakout" of its transportation property that is commonly characterized as personalty must be accepted in this action. The Court concludes that plaintiff has shown that fifty-percent of its transportation property in Iowa is properly characterized as personal property, and would be so characterized were it not for Iowa Code § 427A.1, subd. 1(h).

**D. Classifying the claim: do the facts present a de facto tax discrimination claim or an "any other [discriminatory] tax" claim.**

■ Defendant contends that the facts in this action require the Court to analyze plaintiff's claim as a de facto discrimination claim, governed by sections 306(1)(a), 306(2)(c), and 306(3)(c). This contention is based primarily on defendant's attempt to distinguish *Ogilvie v. State Bd. of Equalization,* 492 F.Supp. 446 (D.N.D.1980), *aff'd,* 657 F.2d 204 (8th Cir.) *cert. denied,* 454 U.S. 1086, 102 S.Ct. 644, 70 L.Ed.2d 621 (1981). According to defendant, *Ogilvie* is distinguishable on the ground that, under the North Dakota tax system challenged in *Ogilvie,* the assessment ratio of Section 306(1)(a) was not affected by the inclusion of railroad personalty and the exclusion of all commercial and industrial personalty. In this action, the challenged tax scheme does not directly affect the transportation personal property assessment percentage but does affect the commercial and industrial personalty assessment percentage, thus affecting the assessment ratio. Notwithstanding the plausibility of defendant's

proposed distinction of Ogilvie, however, the Court is convinced that the rationale underlying the Section 306(1)(d) analysis in *Ogilvie* opinion applies with full force in this action.

In *Ogilvie* the United States Court of Appeals for the Eighth Circuit could have carried out the de facto discrimination analysis called for by defendant. Certain centrally-assessed commercial and industrial personalty was taxed in North Dakota; only locally-assessed commercial and industrial personalty was exempt. *See Ogilvie v. State Bd. of Equalization,* 492 F.Supp. 446, 455 (D.N.D.1980), *aff'd,* 657 F.2d 204, 209–10 (8th Cir.), *cert. denied,* 454 U.S. 1086, 102 S.Ct. 644, 70 L.Ed.2d 621 (1981). Thus, assessment percentages for both personal transportation property and personal commercial and industrial property (including centrally and locally assessed types) could have been calculated. The Court of Appeals, however, determined that such an analysis was inappropriate. In circumstances similar to those presented here, the Court of Appeals decided that discriminatory taxation, implemented through selective classification of property, presented a case of *de jure* discrimination proscribed by Section 306(1)(d). *Ogilvie v. State Bd. of Equalization,* 657 F.2d 204, 210 (8th Cir.), *cert. denied,* 454 U.S. 1086, 102 S.Ct. 644, 70 L.Ed.2d 621 (1981). The Court will follow the well-reasoned analysis of the Court of Appeals in *Ogilvie.*

The most significant effect of accepting defendant's argument that this is a *de facto* discrimination claim would be that the very large statutory personal property tax exemptions would be irrelevant to the analysis. This is because, as pointed out by defendant, the statutory exemptions would be excluded from the analysis under the last clause of Section 306(3)(c).[6] In this

---

**5.** "De jure" discrimination occurs in circumstances in which transportation property is required by statute to be assessed or taxed at a rate different from other commercial and industrial property. In contrast, "de facto" discrimination occurs in circumstances in which, though the taxation system is not designed to cause differing assessment or taxation rates, the

operation of the system results in such disparity. *Burlington Northern R.R. v. Lennen,* 715 F.2d 494, 497 (10th Cir.1983); *Clinchfield R.R. v. Lynch,* 527 F.Supp. 784, 785 (E.D.N.C.1981), *aff'd,* 700 F.2d 126 (4th Cir.1983). Both forms of discrimination are proscribed by Section 306.

**6.** The last clause of Section 306(3)(c) excludes all commercial and industrial property not sub-

action, plaintiff has shown with valid and reliable evidence that the statutory $175,000-per-year exemption (in conjunction with the rollback) has the effect of reducing to approximately five percent the portion of personal property owners who have to pay any tax on their personal property. The Court accepts plaintiff's proof and, additionally, finds that the statutory exemption is the most significant factor resulting in such a small percentage of Iowa personal property owners paying a tax on their personal property. It would be illogical to make irrelevant the statutory exemption which has the most discriminatory effect on the taxation of plaintiff's transportation property. Congress could not have intended such a result in enacting Section 306(3)(c).

Another effect of treating this as a *de facto* discrimination claim would be that non-exempt personal property, other than transportation property, would significantly affect the ratio calculation. The Court finds that defendant has shown that approximately one-half the value of all personal property in Iowa is excluded from the tax benefits of the rollback and exemptions by the classification system provided for in Iowa Code § 427A.1. The fact that a number of personal property owners other than railroads are discriminated against in the same manner as plaintiff should not affect plaintiff's claim for relief under Section 306. *See Ogilvie v. State Bd. of Equalization,* 492 F.Supp. 446, 455 (D.N.D.1980), *aff'd,* 657 F.2d 204 (8th Cir.), *cert. denied,* 454 U.S. 1086, 102 S.Ct. 644, 70 L.Ed.2d 621 (1981). Thus, the Court concludes that it would not be in keeping with Section 306 to aggregate all commercial and industrial personal property because doing so would serve to skew the analysis and reduce the calculated quantity of tax discrimination against plaintiff that is actually occurring under the Iowa personal property tax plan.

In summary, the Court concludes, for the reason stated above, that plaintiff's claim is properly to be treated as an "any other [discriminatory] tax" claim, governed by Section 306(1)(d) and the rationale of *Ogilvie.*

E. Section 306(1)(d) Analysis.

█ Plaintiff contends that all its personal property should be exempted from taxation under a proper mode of analysis. According to plaintiff, it must be treated as the median taxpayer who owns exempt personal property and who, in turn, benefits from the Iowa personal property tax plan. Plaintiff has shown that well over fifty-percent of such taxpayers do not pay any tax on their personal property taxed as personal property because of the $175,000 exemption. Therefore, plaintiff asks the Court to order that it not pay any tax on its approximately $30 million worth of property properly classified as personalty.

The Court finds no reason to craft such a crude form of relief in circumstances in which relief can be tailored to remedy the specific discrimination shown to exist. In addition, there is no case law showing that the "median approach" is appropriate in Section 306(1)(d) cases. Rather, precedent indicates that the relief should eliminate only the type of tax discrimination proved to exist, without considering a fictional median taxpayer. *See, e.g., Ogilvie v. State Bd. of Equalization,* 492 F.Supp. 446, 455 (D.N.D.1980), *aff'd,* 657 F.2d 204, 210 (8th Cir.), *cert. denied,* 454 U.S. 1086, 102 S.Ct. 644, 70 L.Ed.2d 621 (1981); *Alabama Great Southern R.R. v. Eagerton,* 541 F.Supp. 1084, 1087 (M.D.Ala.1982); *see also Atchison, Topeka, & Santa Fe Ry. v. Bair,* 535 F.Supp. 68, 69–71 (N.D.Iowa 1982). Accordingly, the Court will grant relief in a form intended to eliminate the specific type of tax discrimination proven by plaintiff in this portion of this civil action.

IT IS THEREFORE ORDERED that defendant's motion to dismiss plaintiff's request for tax-payment refunds for tax years 1979 and 1980, and the first half of

---

ject to a property tax levy from the term, "commercial and industrial property," as used in sections 306(1)(a)–(c).

tax year 1981, shall be and hereby is granted.

IT IS FURTHER ORDERED that, pursuant to sections 306(1)(d) and 306(2) of the Railroad Revitalization and Regulatory Reform Act of 1976, defendant is enjoined from excluding fifty per cent of plaintiff's unit value, which is properly characterized as personal property, allocable to Iowa, from the tax benefits derived from the rollback and exemption provisions of Iowa Code §§ 427A.11, .2, and .9, for the second half of tax year 1981 and tax year 1982.