**BURLINGTON NORTHERN RAILROAD CO.**

v.

**John JAMES, Commissioner of Revenue of the State of Minnesota.**

**Civil No. 4–88–362.**

United States District Court, D. Minnesota, Fourth Division.

Aug. 11, 1989.

James W. McBride, Laughlin, Halle, Bigson & McBride, Washington, D.C., Stephen D. Goodwin, Laughlin, Halle, Bigson & McBride, Memphis, Tenn., and Megan Ricke, Thomas W. Spence Law Firm, St. Paul, Minn., for plaintiff.

Barry R. Greller and Thomas O'Hern, Sp. Asst. Attys. Gen., St. Paul, Minn., for defendant.

John W. Windhorst, Jr., and William R. Goetz, Dorsey & Whitney, Minneapolis, Minn., for Duluth, Winnipeg & Pacific Railway Co., amicus curiae.

## ORDER

ROSENBAUM, District Judge.

*Introduction*

Plaintiff, the Burlington Northern Railroad Company (BN), challenges the 1987 ad valorem tax assessed by defendant John James, Commissioner of Revenue of the State of Minnesota (Commissioner). BN contends the method by which the assessed value of its railroad operating property was computed effectively imposed a tax on a portion of BN's personal property, while the personal property of other commercial and industrial taxpayers was exempt under Minnesota law. BN claims the Commissioner violated Section 306, Sec. 28(1)(d) of the Railroad Revitalization and Regulatory Reform Act of 1976 (the 4–R Act), 49 U.S.C. § 26c and recodified at 49 U.S.C. § 11503(b)(4). Plaintiff seeks 1) declaratory relief, pursuant to 28 U.S.C. § 2001, finding the Minnesota tax to be in violation of Section 306, Sec. 28(1)(d), and 2) a permanent injunction to restrain defendant from taking any action to access, levy, or collect any wrongfully assessed ad valorem taxes.[1]

The jurisdiction of this Court is properly invoked pursuant to the commerce clause of the Constitution, as well as 28 U.S.C. §§ 1331 and 1337, and 49 U.S.C. § 11503(c).

This action was tried to the Court on March 7 and 8, 1989. The Court has considered all the evidence presented at trial, as well as the argument, pleadings, and memoranda of each party. This order constitutes the Court's findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure (Fed.R.Civ.P.).

1. On filing this action, the parties agreed to place the contested sum in escrow. That agreement was amended by the parties on October 12, 1988, to provide for plaintiff maintaining the contested tax, $845,181.82, subject to payment on the Court's order. The Court entered agreed orders to effectuate these agreements on May 11 and October 12, 1988.

*Facts*

The parties jointly prepared an extensive "Statement of Agreed Facts" (stipulation), which is appended to this order as Exhibit 1.[2] All facts set forth in the stipulation are accepted by this Court, although each will not be recited individually. Several of the findings which follow are summaries of facts detailed in the stipulation.

Plaintiff BN is a common carrier by rail subject to regulation under the Interstate Commerce Act, 49 U.S.C. § 1, *et seq.* Stipulation, paragraphs 4 and 5. Defendant Commissioner exercises general supervision over the administration of the tax laws of the State of Minnesota, pursuant to Minnesota Statutes, § 270.06(1). The Commissioner, pursuant to Minnesota Statutes, § 270.81, is charged with valuing the operating property of every railroad company doing business in Minnesota. For tax year 1987, defendant valued plaintiff's railroad operating property in accord with rules promulgated by the Commissioner. Stipulation, paragraph 7. *See* Minnesota Rules, Parts 8106.0100–8106.9900.

The Commissioner followed four steps in computing plaintiff's 1987 ad valorem tax. Defendant first determined the value of BN's railroad operating property at a system wide level (across the entire country). The Commissioner, secondly, determined the amount of system value attributed to property located within Minnesota. As a third step, the Commissioner deducted, from the Minnesota portion, certain property deemed not subject to ad valorem taxation. Fourth, the Commissioner apportioned the Minnesota-taxable portion of plaintiff's system value among those counties in which BN operated.

To accomplish the first step, the system wide valuation, all BN railroad operating property was valued based on its fair market value, pursuant to Minnesota Statutes, § 270.84. It was assumed that the fair market value was measured by appraising BN's railroad operating property as a go-

ing concern. Therefore, the Commissioner valued BN's railroad operating property without regard to geographical or functional division of the whole property. No distinction was drawn between real or personal property or the location of real or personal property. No values were separately assigned to any component part of the system, real or personal, nor were any particular values assigned to properties located in any specific state. Stipulation, paragraphs 8 and 9.

In determining BN's 1987 system value, the Commissioner then used three prescribed methods for determining value: 1) the total original cost of all of BN's railroad property, less deductions for obsolescence; 2) the capitalized income of BN; and 3) the total amount of BN stock and debt. The Commissioner then combined or correlated each resulting value to determine a single system unit value for BN. Defendant calculated the fair market value of BN's system for tax year 1987 as $3,070,841,488.00. It is stipulated that, for the purpose of this case, there is no dispute concerning defendant's fair market value determination. Stipulation, paragraphs 10–16.

To accomplish the second step, the Commissioner calculated the portion of BN's system value attributed to property located within Minnesota. Defendant averaged four factors—miles of track, ton miles of revenue freight, gross transportation revenue, and cost of road property—to determine an allocation percentage, that portion of BN's system value allocated to Minnesota. For tax year 1987, defendant calculated that an allocation percentage of 8.50% represented the portion of BN's system value located in Minnesota. Applying this 8.5% to the previously determined 1987 system value of $3,070,841,488 rendered a 1987 Minnesota value of $261,021,526. BN makes no present challenge to this calculation. Stipulation, paragraphs 17–20.

---

**2.** The Court particularly commends counsel and the parties for the excellence of the quality of this submission. As submitted, it accomplished the goal of clearly setting forth the context of

the dispute and at the same time sharpening the focus of the case on those issues requiring judicial resolution.

As the third step in the valuation process, the Commissioner subtracted the value of property not subject to Minnesota ad valorem taxation. To make this subtraction, the Commissioner made three determinations, the first two of which are not in dispute: defendant 1) determined BN's non-operating real property located in Minnesota; 2) subtracted pollution control property, which is tax exempt, pursuant to Minnesota Statutes, § 272.02, subdivision 1(9); and 3) calculated the deduction attributed to personal property. Stipulation, paragraphs 21 and 22.

The parties agree that: a) under Minnesota law virtually all personal property, including commercial and industrial personal property, is exempt from ad valorem taxation (*see* Minnesota Statutes, § 272.02); and b) the appropriate procedure for deducting BN's personal property is by breaking out the Minnesota personal property from the plaintiff's system value. Stipulation, paragraphs 23, 26, and 27.

The issue in this lawsuit concerns the method by which the Commissioner "broke out" or calculated BN's personal property deduction. The personal property break out was accomplished by dividing the book cost of personal property by the total book cost of real and personal property combined.[3] Plaintiff, for the purposes of this action, does not challenge these accounts or their present valuation. For tax year 1987, defendant determined that 31.38% of the Minnesota portion of plaintiff's system value was personal property. Stipulation, paragraphs 26–36. This calculation was not computed on a system-wide basis. Instead, the breakout was accomplished by focusing on Minnesota data. Stipulation, paragraph 37.

Finally, for the purposes of this action, plaintiff does not challenge either the manner in which defendant apportioned the resulting valuation among Minnesota's counties, or the equalization ratio applied or the mill levy or tax rate assessed by each county. Stipulation, paragraph 42.

*Discussion*

This cause was brought pursuant to Section 306, Sec. 28(1)(d) of the 4–R Act. The purpose of Section 306 is to prevent tax discrimination against railroads. *Burlington Northern R. Co. v. Oklahoma Tax Com'n*, 481 U.S. 454, 107 S.Ct. 1855, 1858, 95 L.Ed.2d 404 (1987); *Ogilvie v. State Board of Equalization*, 657 F.2d 204, 210 (8th Cir.), *cert. denied*, 454 U.S. 1086, 102 S.Ct. 644, 70 L.Ed.2d 621 (1981); *Trailer Train Co. v. Bair*, 765 F.2d 744, 745 (8th Cir.), *cert. denied*, 474 U.S. 1021, 106 S.Ct. 572, 88 L.Ed.2d 556 (1985). Section 306, Sec. 28(1)(d) provides in relevant part:

> It is unlawful for a State, a political subdivision of a State, or a governmental entity or person acting on behalf of such State or subdivision to commit any of the following prohibited acts:
>
> \*     \*     \*     \*     \*     \*
>
> (d) The imposition of any other tax which results in discriminatory treatment of a common carrier by railroad subject to this part.

Pub.L.No. 94–210, 90 Stat. 54 (Feb. 5, 1976), 49 U.S.C. § 26c, and later recodified at 49 U.S.C. § 11503(b)(4), as part of the Revised Interstate Commerce Act, Pub. L.No. 95–473, 92 Stat. 1337 (Oct. 13, 1978).[4]

---

**3.** This valuation, using book values, may be stated arithmetically as follows:

$$\frac{\text{Personal Property}}{\text{Real Property} + \text{Personal Property}} = 31.38\%$$

**4.** Plaintiff, in its pleadings and memoranda, refers to the text of the original 4–R Act, codified at 49 U.S.C. § 26c. Defendant, however, refers to the text of the recodification, 49 U.S.C. § 11503. The language of Section 306, Sec. 28(1)(d), as enacted, differs slightly from the language of 49 U.S.C. § 11503(b)(4), as recodified. Section 11503 provides in relevant part:

> (b) The following acts unreasonably burden and discriminate against interstate commerce, and a State, subdivision of a State, or authority acting for a State ... may not do any of them:
>
> \*     \*     \*     \*     \*     \*
>
> (4) impose another tax that discriminates against a rail carrier providing transportation subject to the jurisdiction of the [ICC]....

49 U.S.C. § 11503(b)(4). Because the statutory language of § 11503 cannot be construed as making a substantive change in Section 306, the Court will refer to and apply Section 306 of the 4–R Act as originally enacted throughout this order. *See Burlington Northern R. Co. v. Oklahoma Tax Com'n*, 481 U.S. 454, 107 S.Ct. 1855, 1858 n. 1, 95 L.Ed.2d 404 (1987); *see also Ogil-*

**1062**

Section 306, Sec. 28(1)(d), thus, prohibits the imposition of "any other tax" which results in discrimination against railroads. *Trailer Train, et al. v. Leuenberger*, 885 F.2d 415, 417 (8th Cir.1988) (*citing Trailer Train Co. v. State Bd. of Equalization*, 710 F.2d 468, 472 (8th Cir.1983)).

■ Section 306, Sec. 28(2) of the 4–R Act provides that "the United States district courts have jurisdiction to grant injunctive relief as is necessary to prevent, restrain or terminate acts in violation of Section 306 [, Sec. 28](1)." *Burlington Northern R. Co. v. Bair*, 584 F.Supp. 1229, 1231 (S.D.Iowa 1984), *aff'd*, 766 F.2d 1222 (8th Cir.1985).[5]

Sections 306, Sec. 28(1) and (2), when read together, comprise a congressionally crafted exception to the Tax Injunction Act, 28 U.S.C. § 1341.[6] This exception allows a district court to halt state action which would result in a state receiving tax payments which discriminate against railroads. *Bair*, 584 F.Supp. at 1231.

vie v. State Bd. of Equalization, Etc., 657 F.2d 204, 206 n. 1 (8th Cir.), *cert. denied*, 454 U.S. 1086, 102 S.Ct. 644, 70 L.Ed.2d 621 (1981) (49 U.S.C. § 11503 restates without substantive change Section 306 of the 4–R Act); *Trailer Train Co., et al. v. Leuenberger*, 885 F.2d 415, 416 n. 2 (8th Cir.1988); *Burlington Northern R. Co. v. Triplett*, 682 F.Supp. 443, 444 n. 2 (D.Minn.1988).

5. The Court notes Section 306, Sec. 28(2) authorizes relief "if the ratio of assessed value to true market value with respect to transportation property exceeds by at least five percent the ratio of assessed value to true market value with respect to all other commercial and industrial property in the same assessment jurisdiction." *Ogilvie v. State Bd. of Equalization, Etc.*, 492 F.Supp. 446, 449 (D.N.D.1980), *aff'd*, 657 F.2d 204 (8th Cir.1981), *cert. denied*, 454 U.S. 1086, 102 S.Ct. 644, 70 L.Ed.2d 621 (1981). Section 306, Sec. 28(2) was recodified and appears at 49 U.S.C. § 11503(c). Section 11503(c) provides in relevant part:

[A] district court of the United States has jurisdiction, concurrent with other jurisdiction of courts of the United States and the States, to prevent a violation of subsection (b) of this section ... if the ratio of assessed value to true market value of rail transportation property exceeds by at least 5 percent the ratio of assessed value to true market value of other commercial and industrial property in the same assessment jurisdiction....

Section 306 was not intended, however, to alter "a state's right to tax its citizens as it sees fit, as long as the tax does not discriminate against railroads." *Trailer Train Co., et al. v. Leuenberger*, 885 F.2d at 416–17 (*citing Clinchfield R. Co. v. Lynch*, 784 F.2d 545, 551–52 (4th Cir.1986) (*citing* Special Study Group on Transportation Policies in the United States, 87th Cong., 1st Sess., *National Transportation Policy* 466 (Comm. Print 1961))). In *Fair Assessment in Real Estate Ass'n v. McNary*, 454 U.S. 100, 102 S.Ct. 177, 70 L.Ed.2d 271 (1981), the Supreme Court reaffirmed the longstanding doctrine that:

Federal courts exercise extraordinary restraint in adjudicating actions that would affect state tax affairs. Equitable restraint in state tax matters is "particularly appropriate because of the delicate balance between federal authority and state governments, and the concomitant respect that should be accorded state tax laws in federal court."

49 U.S.C. § 11503(c).
While Section 306, Sec. 28(2)(c) as enacted, and § 11503(c) as recodified, provide that no relief may be granted unless the ratio or assessed value to true market value, with respect to transportation property, exceeds this 5% differential, courts have held that the relief section's jurisdiction limitation applies to equalization claims brought pursuant to Section 306, Sec. 28(1)(a) and not discrimination claims under Section 306, Sec. 28(1)(d). *See e.g., Kansas City Southern Ry. Co. v. McNamara*, 817 F.2d 368, 371 (5th Cir.1987); *Burlington Northern R. Co. v. Bair*, 584 F.Supp. 1229, 1235 (S.D.Iowa 1984), *aff'd*, 766 F.2d 1222 (8th Cir.1985); *Trailer Train Co. v. State Bd. of Equalization*, 697 F.2d 860, 866 (9th Cir.), *cert. denied*, 464 U.S. 846, 104 S.Ct. 149, 78 L.Ed.2d 139 (1983) (Section 306, Sec. 28(1)(c)); *Burlington Northern R. Co. v. Dept. of Revenue*, 570 F.Supp. 585, 595 (W.D. Wis.1983) (Section 306, Sec. 28(1)(c)). It is, therefore, the view of this Court that the 5% assessment ratio limitation in Section 306, Sec. 28(2) does not apply, here, to plaintiff's discrimination claim brought pursuant to Section 306, Sec. 28(1)(d).

6. Section 1341, United States Code, Title 28, provides that:
The district courts shall not enjoin, suspend, or restrain the assessment, levy or collection of any tax under state law where a plain, speedy and efficient remedy may be had in the courts of such states.
28 U.S.C. § 1341.

*Bair,* 584 F.Supp. at 1231–32 (*quoting McNary,* 454 U.S. at 107–109, 102 S.Ct. at 181–83). Principles of comity mandate that the 4–R Act's exception to the broad ban of the Tax Injunction Act be given a narrow construction within the confines of the expressed intent of the Congress. *Bair,* 584 F.Supp. at 1232.

■ With this precept in mind, the Court considers the case at hand, but first notes a conceptual problem: plaintiff claims its personal property has been taxed while Minnesota exempts the personal property of other commercial and industrial taxpayers. There is no doubt that Section 306, Sec. 28(1)(d) of the 4–R Act requires that BN's personal property be exempt from taxation, given Minnesota's exemption of other commercial and industrial taxpayers' personal property. The problem is that plaintiff challenges the *method* used by defendant to determine the value of its real property.

Plaintiff suggests that system figures should have been used to calculate BN's personal property breakout percentage rather than the Minnesota focus which was utilized. Had defendant used plaintiff's alternative method, BN contends its personal property percentage would have been 37.88% of the 8.5% of system value allocated to Minnesota, instead of the 31.38% calculated by the defendant. Plaintiff, thus, seeks to have this court compel the State of Minnesota to use plaintiff's alternative valuation method in lieu of the state's accounting method.

Plaintiff's position presents as its ultimate question whether plaintiff may challenge, in this Court, and under this enactment, the appropriateness of Minnesota's chosen valuation method.

The Supreme Court, in *Burlington Northern R. Co. v. Oklahoma Tax Com'n, supra,* explicitly reserved the question of whether a railroad, in a Section 306 action, may "challenge in the district court the appropriateness of the accounting methods by which the State determined that rail-

road's value or is instead restricted to challenging the factual determinations to which the State's preferred accounting methods were applied." 481 U.S. at 463, 107 S.Ct. at 1860–61 n. 5. Research reveals that no appellate court has finally ruled on this question.

In considering the 4–R Act's application to a state's choice of valuation method, a district court, in *Union Pacific R.R. v. State Tax Com'n of Utah,* 716 F.Supp. 543, 552 (D.Utah 1988), after reviewing the 4–R Act and its legislative history, concluded "the statute was not meant to dictate a state's choice of methodology, at least as long as the methodology chosen had a rational basis and was not chosen for a discriminatory purpose." At 553. Chief Judge Jenkins [7] noted that:

> Congress did not intend "for the federal courts to become involved in establishing … procedures for the states in valuing railroads." [*Burlington Northern R. Co. v. Lennen,* 573 F.Supp. 1155, 1164 (D.KS.1982)].… It is one thing to say that the 4–R Act allows federal courts to review railroads' claims of overvaluation. It is quite another to say that the Act dictates a state's choice of valuation methods. The 4–R Act may provide relief if a state overvalues a railroad by misapplying its chosen methodology or by using a methodology that has no rational basis or is chosen for the purpose of overvaluing railroads.

*Union Pacific R.R.,* at 553 n. 25. Judge Jenkins, therefore, held

> as long as the state's methodology has a rational basis and was not chosen for a discriminatory purpose, the court will not disturb that choice.… [The Court] will not second guess the state's choice of method.

*Union Pacific R.R.,* at 557. The Court finds Chief Judge Jenkins' analysis persuasive.

Accordingly, the Court finds its subject matter jurisdiction to be limited to a determination of whether there is a rational

---

**7.** The Honorable Bruce S. Jenkins, Chief Judge of the United States District Court for the Dis-

trict of Utah.

basis and non-discriminatory purpose underlying the State of Minnesota's valuation methodology.

■ From the evidence at trial and a close review of Minnesota's statutory tax law, the Court finds that Minnesota has not set out to impose a discriminatory tax on railroad personal property. Neither Minnesota law nor the Commissioner's rules seek to impose a tax on a railroad's personal property. To the contrary, Minnesota Statutes, § 272.02, subdivision 1(8), and Minnesota Rules, Part 8106.0600, expressly exempt a railroad's personal property from taxation.

Therefore, the proper question in this lawsuit, given the Court's limited jurisdiction in reviewing Minnesota's valuation methodology, is whether plaintiff has met its burden [8] of demonstrating that the State of Minnesota failed to adopt a rational method for determining plaintiff's 1987 real property value. The evidence showed that Minnesota's valuation method uses separate valuation approaches to accomplish the two step process of valuing a railroad's real property: 1) the determination of the portion of BN's system value allocated to Minnesota, and 2) the break out of BN's personal property from the Minnesota portion of BN's system value.

The BN system value is determined as set forth above and is not challenged here. To determine the real/personal property break out, a separate methodology was employed. Defendant made the personal property break out based on its Minnesota cost, or the portion of its cost allocable to Minnesota, for tax year 1987, as compared to the cost of all of the railroad's Minnesota operating property. Minnesota values were utilized to exclude the value of personal property actually within the state. The Court finds no inherent defect in this methodology and further finds it is not without rational foundation in light of the nature of plaintiff's Minnesota system assets and their treatment under Minnesota law. Minnesota, as an example, has a stat-

utory exemption for anti-pollution assets, the methodology employed by the Commissioner rationally considers such a local distortion.

The purpose of allocating a portion of BN's system value, in the first place, was to ascertain the value of BN's Minnesota assets. The purpose of the deduction/exemption process (personal property break out) was to determine the portions of the Minnesota assets which were real and personal property respectively. It was, therefore, reasonable for defendant to focus on the Minnesota assets when attempting to determine the appropriate portion of those assets which were exempt from ad valorem taxation.

Based on a careful review of all of the evidence presented at trial, the Court concludes that plaintiff has failed to show, by a preponderance of the evidence, that Minnesota's valuation method lacks a rational underlying basis or was chosen for a discriminatory purpose. Plaintiff is not entitled to injunctive relief. Accordingly, IT IS ORDERED that:

1. Plaintiff's complaint is dismissed with prejudice and defendant is awarded judgment.

2. In accordance with the Modification to Agreed Order, dated October 12, 1988, plaintiff shall pay to defendant the tax monies in dispute which it withheld pending the outcome of this action, $845,181.82 plus statutory interest thereon at the rate set forth under Minnesota Statutes, § 272.08.

LET JUDGMENT BE ENTERED ACCORDINGLY.

### EXHIBIT 1

### STATEMENT OF AGREED FACTS

IT IS STIPULATED AND AGREED by and between the above-captioned parties, through their respective attorneys, that the following facts may be taken as true and correct for the purposes of this action and that any documents attached hereto are

---

**8.** "Section 306, Sec. 28(2)(d) of the 4–R Act requires the district court to use the burden of proof generally applicable to civil proceedings."

*Burlington Northern R. Co. v. Bair,* 766 F.2d at 1226.

true and correct copies of the originals thereof; provided, however, that no party waives the right to argue the relevance, materiality or probative value of such facts, or the legal conclusions to be drawn therefrom. These stipulations are made for purposes of this action only and they shall not be binding on any party for any other purposes or in any other action or proceeding.

1. This case arises under 49 U.S.C. § 11503, which is a recodification of Section 306 of the Railroad Revitalization and Regulatory Reform Act of 1976, Pub.L. No. 94–210, 90 Stat. 31, 54.

2. This Court has jurisdiction of this case under 49 U.S.C. § 11503(c).

3. Venue is proper in the Third Division of this District under 28 U.S.C. § 1393.

4. Plaintiff, Burlington Northern Railroad Company (BN), is a Delaware corporation with its principal offices located in Ft. Worth, Texas.

5. BN is a common carrier by rail subject to regulation under the Interstate Commerce Act, 49 U.S.C. § 1 *et seq.* (1982).

6. John James, the Commissioner of the Department of Revenue of the State of Minnesota (Commissioner), exercises general supervision over the administration of the tax laws of the State of Minnesota pursuant to Minn.Stat. § 270.06(1).

7. The Commissioner is charged by Minnesota law, under Minn.Stat. § 270.81 (1986), to value all operating property of railroads operating in the State of Minnesota. Valuation of BN for the 1987 tax year was conducted by the Commissioner in accordance with rules duly promulgated by the Commissioner. A copy of the rules, Minn. Rules pts. 8106.0100–8106.9900, is attached hereto as Exhibit 2. A copy of the Commissioner's valuation and related worksheets for BN for the 1987 tax year is attached hereto as Exhibit 3. A copy of BN's 1987 State Report to the Commissioner and related exhibits and correspondence are attached hereto as Exhibit 4.

8. The first step in the Commissioner's determination of the valuation of BN's railroad operating property for the State of Minnesota is to determine the "fair market value" of BN's property. Under Minnesota law, all property is valued and taxed based on its "market value." The parties stipulate that the terms "market value," "fair market value," and the term "true market value" under Section 306 are synonymous terms.

9. For the 1987 tax year, the Commissioner determined the fair market value of BN's railroad operating property on a "unit" or "system" basis. Under the unit concept of value, it is assumed that the fair market value of railroad operating property is measured, not by separately appraising and totaling the value of each segment or component of the railroad, but by appraising the property as a going concern.

10. Minnesota utilized three indicators of value to determine the fair market value of BN's system for the 1987 tax year. These indicators are called the three "approaches to value." The three approaches to value utilized by Minnesota in determining the estimated unit value of railroad operating property are cost, capitalized income, and stock and debt.

11. The "cost approach" to determining the unit value of BN's railroad operating property relies heavily on the Annual Report of BN to the Interstate Commerce Commission, commonly referred to as the "R–1." Such a report is filed by all of the Class 1, or major railroads in the country, and a copy of the R–1 must be filed annually by BN with the Commissioner as part of the Commissioner's Minnesota valuation process. The R–1 reports to the ICC, among numerous other things, original costs in all road and equipment accounts. The road and equipment accounts are broken down by numerous account numbers, as designated by the ICC. These accounts will be described later in these stipulations in more detail, and will be referred to by the parties as the "ICC Accounts." A copy of BN's R–1 for the 1987 tax year (for the year ended December 31, 1986) as filed with the ICC is attached hereto as Exhibit 5.

12. Under the cost approach to value, the Commissioner totals the original cost of the railroad property, and then makes deductions for obsolescence. For the 1987 tax year, the Commissioner determined that the value of BN's unit system based on the cost approach was approximately 4.4 billion dollars. *See* Exhibit 3, p. 2.

13. The second approach utilized by the Commissioner to value the unit system of BN is called the "capitalized income" approach. Under this approach, the Commissioner determines, based upon the previous five years, an average of annual net railway operating income, and capitalizes this income figure by a capitalization rate. Using this approach to value for the 1987 tax year, the Commissioner determined that the value of BN's system for 1987 was approximately 2.66 billion dollars. *See* Exhibit 3, p. 2.

14. The third approach to value utilized by the Commissioner is the "stock and debt" approach. Under the stock and debt approach, the value of railroad system property is estimated by valuing the railroad's outstanding debt and equity securities, based on the assumption that the aggregate market value of all of the railroad's stocks, bonds, and other securities fairly represent an appraisal by the investing public of the value of the railroad. For the 1987 tax year, the Commissioner determined that the value of BN's system under the stock and debt approach was approximately 3.25 billion dollars. *See* Exhibit 3, p. 4.

15. The Commissioner then combines or "correlates" the three approaches to value in order to determine a single system unit value for BN. The Commissioner relies most heavily (60%) on the income indicator, and less heavily on the stock and debt indicator (25%) and the cost indicator (15%). After correlating the three values, the Commissioner calculated the fair market value of BN's unit or system as of January 2, 1987 (for the 1987 tax year) as $3,070,841,488. *See* Exhibit 3, p. 1.

16. For purposes of this action only, BN does not challenge the Commissioner's determination of the 1987 system or unit value of BN. Although BN does not concur in all aspects of the Commissioner's determination of its system value, it is not challenging that determination of the system value for purposes of this action. BN hereby reserves its right to challenge the Commissioner's methodology in other tax years and in any forum.

17. In Minnesota, for ad valorem tax purposes, a portion of the full system or unit value of each railroad, such as BN, must be "allocated" to the State in order to determine a state assessed value. To accomplish this allocation, Minnesota utilizes a methodology adopted by many states, which provides that various factors will be utilized in determining a final allocation factor or percentage.

18. The Commissioner utilized four factors to determine an appropriate allocation percentage in order to allocate BN's system value to the State of Minnesota. Those four factors are miles of track, ton miles of revenue freight, gross transportation revenue, and cost of road property. For the 1987 tax year, the Commissioner determined that 9.56% of BN's system miles of track were located in Minnesota; that 6.72% of BN's system ton miles of revenue freight were transported in Minnesota; that 8.23% of BN's gross transportation revenue was earned within Minnesota; and that 9.48% of the original cost of road property had originally been invested in Minnesota. The Commissioner then averaged these four factors and determined an allocation percentage of 8.50% for Minnesota. *See* Exhibit 3, p. 5.

19. Therefore, the Commissioner determined that 8.50% of BN's total system or unit value for the 1987 tax year should be allocated to the State of Minnesota for ad valorem tax purposes. Applying this allocation percentage to the Commissioner's previously determined system value of $3,070,841,488, the Commissioner determined that the Minnesota portion of BN's unit value was $261,021,526. *See* Exhibit 3, p. 1 (line 6).

20. BN does not necessarily agree with the Commissioner's methodology and deter-

mination of the allocation percentage for Minnesota. In addition, BN contends that the state statistics utilized by the Commissioner and filed pursuant to his directions contain allocations to the State of Minnesota which are in part the result of arbitrary separations or prorations. BN does not necessarily accept these separations or prorations as reflecting actual operating results for the State of Minnesota. Nevertheless, for purposes of this action only, BN does not challenge the allocation percentage determined by the Commissioner for the 1987 tax year, although BN reserves the right to challenge this methodology in other tax years and in any forum. Therefore, the parties agree and stipulate that, for purposes of this lawsuit, the Court may accept the figure of $261,021,526 as the Minnesota portion of BN's unit value for 1987.

21. As the next step in the valuation process, the Commissioner then makes deductions from the Minnesota portion of the unit value. For example, pollution control equipment is exempt from taxation in Minnesota, and the Commissioner therefore makes a deduction for BN's pollution control equipment. In addition, a portion of BN's property which is included in the computation of the unit value is defined as "non-operating" property, which is valued by the local assessors in Minnesota. Therefore, a deduction for this non-operating property is also made. The deductions made by the Commissioner are not in dispute in this case.

22. After deducting the value of the pollution control and non-operating property, the Commissioner determined that the Minnesota unit value of BN for 1987 was $258,287,743. *See* Exhibit 3, p. 1 (line 10).

23. Under Minnesota law, virtually all personal property, including commercial and industrial personal property, has been exempted from ad valorem taxation. For purposes of this action, the parties agree that Section 306 requires that the personal property of railroads such as BN will likewise be exempt from taxation.

24. In order to effectuate this exemption for personal property, the Commissioner deducts from the Minnesota portion of the unit value a percentage of that value which is personal property. For the 1987 tax year, the Commissioner determined that 31.38% of BN's Minnesota unit value allocated to Minnesota was personal property. *See* Exhibit 3, p. 1 (line 11).

25. As stated above, the total unit value or system value which is allocated to the State of Minnesota is composed of both real and personal property. Under the unit or system value concept, the entire railroad system operating property is measured not by separately appraising and totaling the value of each segment or component of real or personal property, but by the integrated use of all of those parts to generate income. Nevertheless, the parties agree that personal property must be deducted from the Minnesota portion of BN's unit value in order to afford railroad property the benefit of the separate tax treatment (i.e., exemption) of personal property.

26. The parties generally agree and stipulate for purposes of this action that the appropriate procedure for deducting personal property is by a "break out" of personal property from the Minnesota portion of the unit. This break out is accomplished by establishing a relationship between the book cost of personal property, divided by the total book cost accounts of both real and personal property combined. Although BN denies that "book value" or costs represent present fair market value, BN agrees that the ratio of the personal property costs to the total property costs may be used to establish the percentage of personal property within the unit.

27. BN's challenge in this action arises from its claim that the Commissioner utilized a procedure which included a portion of BN's personal property, which had been allocated to the State from the unit value, in the final valuation. The Commissioner disputes this claim. However, in order to understand BN's claim, it is necessary to state in some detail how the Commissioner determined that 31.38% of the total Minne-

sota value of BN's property was personal property.

28. In determining BN's Minnesota deduction for personal property, the Commissioner first designates those ICC accounts, or portions thereof, which he determines to be personal property. Those accounts, or portions thereof, designated by the Commissioner as personal property for the 1987 tax year were as follows:

(a) computer and word processing systems and office furniture and fixtures (part of ICC Account 16);

(b) communication systems (ICC Account 26);

(c) signals and interlockers (ICC Account 27);

(d) roadway machines (ICC Account 37);

(e) shop machinery (ICC Account 44);

(f) coal and ore wharves (ICC Account 24);

(g) power plant machinery (ICC Account 45);

(h) equipment (ICC Accounts 52–58, consisting of locomotives, rolling stock and other types of equipment).

The Commissioner also includes leased equipment as personal property. Although the system-wide total original cost of non-capitalized leased equipment is not detailed in the R–1, BN reported to the Commissioner for the 1987 tax year a total original cost of non-capitalized equipment leases of $982,862,382.

29. BN does not necessarily agree that the accounts, or portions thereof, designated by the Commissioner as "personal property" are necessarily the optimum selection of the proper accounts for inclusion. Nevertheless, for purposes of this action only, BN does not challenge the Commissioner's designation of those accounts, or portions thereof, which should be considered as "personal property."

30. The original cost of the accounts listed in Stipulation No. 28 as of January 2, 1987, on a system-wide basis, are stipulated to be as follows (in 000's):

| | | |
|---|---|---|
| a. | Communication systems | $ 117,188 |
| b. | Signals and interlockers | 290,723 |
| c. | Roadway machines | $ 116,085 |
| d. | Shop machinery | 63,115 |
| e. | Power plant machinery | 4,107 |
| f. | Office furniture and fixtures | 13,087 |
| g. | Computer and word processing equipment | 23,365 |
| h. | Equipment-owned | 1,711,935 |
| i. | Equipment-leased | 982,863 |
| | TOTAL | $3,322,468 |

31. The parties agree and stipulate that ICC Account 24, Coal and Ore Wharves, is composed at least in part of personal property. The total original costs in this Account 24, was included in the Commissioner's determination of BN's system value, as described in Paragraph 11, *supra*. However, the Commissioner's calculation for the personal property exemption for BN did not include any of Account 24 because BN had no property designated as a coal or ore wharve within Minnesota and because BN could not identify any items of personal property within that account actually located in Minnesota. The parties agree and stipulate, for purposes of this action only, that 24% of Account 24 on a system-wide basis is personal property. The parties further agree and stipulate that for the 1987 tax year, as of January 2, 1987, the original cost in Account 24 was $17,413,000 on a system-wide basis, and thus 24% would be $4,179,000, representing that portion of Account 24 on a system-wide basis which is personal property.

32. In addition to keeping accounts reflecting original costs, the railroads also maintain accounts showing depreciation, so that the depreciated cost within most accounts can be determined. Again, BN does not necessarily agree that original cost is more appropriate than depreciated cost, but the Commissioner utilizes original cost, and for purposes of this action only, BN does not challenge the use of original cost.

33. The accounts designated as "personal property" accounts comprise the numerator of the ratio representing the percentage of BN's property which is personal property. The denominator is composed of almost all ICC accounts, including the "personal property" accounts in addition to the real property accounts. In determining the denominator of the personal property per-

centage, the Commissioner designated the following ICC accounts:

    (a) road accounts (ICC Accounts 1–30);

    (b) equipment accounts (ICC Accounts 52–58);

    (c) construction work in progress (ICC Account 43);

    (d) Office Building;

    (e) leased equipment (*see* Paragraph 28, *supra*).

*See* Exhibit 3, p. 6.

34. As was stated by BN in connection with Stipulation No. 29 in reference to the designation of personal property accounts, BN does not necessarily agree that all of the accounts included by the Commissioner in the denominator of the personal property percentage are appropriate. Nevertheless, for purposes of this action only, BN does not challenge the Commissioner's designation of those accounts, or portions thereof, which should be included in the denominator of the personal property percentage.

35. The parties hereby agree and stipulate that the total system original cost for the accounts stated in Stipulation No. 33 for the 1987 tax year are as follows (in 000's):

| | | |
|---|---|---|
| (a) | Road accounts | $6,040,117 |
| (b) | Equipment-owned | 1,711,935 |
| (c) | Equipment-leased | 982,863 |
| (d) | Construction work in progress | 33,838 |
| (e) | Office Building | 14,164 |
| | TOTAL | $8,782,917 |

36. The parties hereby stipulate and agree that, should the Court determine the personal property percentage must be calculated by use of the system-wide numbers (including the coal and ore wharves), then the percentage of personal property for BN for the 1987 tax year would be 37.88%. The details of the calculation of this percentage appear as Exhibit 6. The Commissioner's calculation of 31.38% appears in the "Minn." column, and BN's calculation appears in the "System" column. The Commissioner does not stipulate that the calculation shown in the "System" column of Exhibit 6 is appropriate, but he does stipulate that the system numbers contained in the chart are accurate.

37. The methodology employed by the Commissioner to determine the personal property percentage for BN was not computed on a system basis. Instead, the Commissioner utilized a methodology to determine the personal property percentage by looking at BN's property located within the state. For some of the accounts designated as "personal property" as appearing in Stipulation No. 28, the original costs are maintained on a state-by-state basis and can be identified on the books of BN. As mentioned previously, BN disputes this method of computing a personal property percentage, but for purposes of this Stipulation only, BN stipulates that the original costs for property within Minnesota for the following accounts are as follows (in 000's):

| | | |
|---|---|---|
| (a) | Communication systems | $ 8,382 |
| (b) | Signals and interlockers | 26,915 |
| (c) | Shop machinery | 7,615 |
| (d) | Power plant machinery | 558 |
| | TOTAL | $43,470 |

38. BN could not readily determine the original cost for office furniture, office fixtures, computer systems, and word processing within the State of Minnesota for the 1987 tax year. Therefore, BN requested that the Commissioner apply the allocation percentage which he used to allocate a portion of the unit value to the State of Minnesota (8.50%) in order to establish the original cost for office furniture and fixtures, computer systems, and word processing equipment in Minnesota. In order to ease the administrative burden on BN, the Commissioner granted this request. The parties agree and stipulate that the numbers so calculated were as follows (in 000's):

| | | |
|---|---|---|
| (a) | Office furniture and fixtures | $1,112 |
| (b) | Computer systems and word processing | 1,986 |
| | TOTAL | $3,098 |

39. The majority of BN's personal property consists of rolling stock, such as locomotives and freight-train cars, which are moveable and have no situs. The Commissioner therefore calculated a percentage to allocate BN's owned equipment (ICC Accounts 52–58) and leased equipment to the State of Minnesota. In calculating this percentage, the Commissioner used the ratio of car and locomotives miles in Minneso-

ta (which were 332,416,508 miles for the 1987 tax year) versus car and locomotive miles from the BN system (which were 4,851,747,524 miles for the 1987 tax year). The parties calculate this ratio to be 6.85%. Applying a ratio of 6.85% to the system-wide equipment accounts of $2,694,798,000, the parties stipulate that the number would be as follows:

Equipment-owned and leased     $184,593,621.

Roadway machinery (Account 25) also has no situs, and the BN used the same ratio of 6.85% to allocate BN's total roadway machinery account on a system basis ($116,085,000) to the State of Minnesota and reported this amount to the State. The parties stipulate that the original cost of roadway machines thus calculated for Minnesota was $7,951,823.

40. Using the calculations described in the previous stipulations, the Commissioner thereby determined that the personal property percentage for BN for the 1987 tax year was 31.38%. The "Minn." column of Exhibit 6 to these stipulations contains the Commissioner's calculation.

41. After the Commissioner determined the personal property percentage of 31.38%, he multiplied the total Minnesota unit value (after deduction for pollution control and non-operating property) by that percentage, to determine that the exempt personal property amount for 1987 was $81,050,694. Deducting this amount from the unit value subject to the personal property deduction, the Commissioner determined that BN's 1987 Minnesota ad valorem valuation (prior to equalization) was $177,237,049. *See* Exhibit 3 (cover page) and Exhibit 6.

42. After the Commissioner has determined the valuation for BN, he next apportions that total state value to each of the counties and other taxing districts in which BN owns property. He further equalizes BN's valuation based on the ratio of assessed value to true market value of other property in each county. He then certifies to each county its portion of the BN value, and the county applies thereto the county mill levy or tax rate. For purposes of this action, BN does not challenge the manner in which the Commissioner apportions its value to each county, the equalization ratio applied, or the mill levy or tax rate by the county. Therefore, this Court need only determine the appropriate personal property deduction in order to resolve this suit.

43. The parties stipulate and agree for purposes of this action only that all of the properties represented in the personal property accounts in Paragraphs 28, 30, and 31 of this Stipulation constitute "transportation property" as that term is used in Section 306.

44. The parties further agree and stipulate for purposes of this action only that the property represented and described in Paragraphs 28 and 30 of this Stipulation constitutes personal property for purposes of ad valorem taxation exemption under Minnesota state law.

45. All references to, and description of, the Minnesota statutes and rules contained in this Stipulation are for the convenience of the Court and the parties expressly agree that the official published text thereof is controlling as to the requirements of the law.

46. Pursuant to the Court's Final Pretrial Order, a copy of the curriculum vitae of the plaintiff's expert witness, Thomas K. Tegarden, is attached as Exhibit 7, and a copy of the curriculum vitae of the defendant's expert witness, Michael W. Goodwin, is attached as Exhibit 8.

Spence Law Offices
Thomas W. Spence
Degree of Honor Building
Suite 600
325 Cedar Street
St. Paul, Minnesota 55101
Telephone: (612) 223–8000

Dated: 2/3/89
Laughlin, Halle, Gibson & McBride
By s/Stephen D. Goodwin
    Stephen D. Goodwin
    50 North Front, Suite 650
    Memphis, Tennessee 38103–1106
    Telephone: 901/576–8088
    Attorneys for Plaintiff

Hubert H. Humphrey, III
Attorney General
State of Minnesota

Dated: 2/3/89
  By s/Barry R. Greller
    Barry R. Greller
    Special Assistant
    Attorney General
    Tax Litigation Division
    10 River Park Plaza
    Mail Station 0600
    St. Paul, Minnesota 55164–0600
    Telephone: (612) 296–3421
    Attorneys for Defendants