**BURLINGTON NORTHERN RAILROAD CO., Appellant,**

**v.**

**John JAMES, Commissioner of Revenue of the State of Minnesota, Appellee.**

**No. 89-5464MN.**

United States Court of Appeals, Eighth Circuit.

Argued June 15, 1990.

Decided Aug. 22, 1990.

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

James W. McBride, Washington D.C. (Anne M. Stollee, and Laughlin, Halle, Gibson & McBride, Washington, D.C., Stephen D. Goodwin, and Laughlin, Halle, Gibson & McBride, Memphis, Tenn., Megan W. Ricke and Thomas W. Spence, St. Paul, Minn., on the brief) for appellant Burlington Northern R. Co.

Barry R. Greller, Sp. Asst. Atty. Gen., St. Paul, Minn. (Hubert H. Humphrey, III, Atty. Gen., and Tax Litigation Div., St. Paul, Minn., on the brief) for appellee John James.

John W. Windhorst, Jr., William R. Goetz, and Dorsey & Whitney, Minneapolis, Minn., filed a brief for amicus curiae Duluth, Winnipeg & Pacific Ry. Co.

Before LAY, Chief Judge, JOHN R. GIBSON and TIMBERS *, Circuit Judges.

TIMBERS, Circuit Judge:

Appellant Burlington Northern Railroad Company ("BN") appeals from an order entered August 11, 1989, in the District of Minnesota, James M. Rosenbaum, District Judge, dismissing BN's complaint on the ground that "its subject matter jurisdiction [was] limited to a determination of whether there is a rational basis and non-discriminatory purpose underlying the State of Minnesota's valuation methodology." *Burlington Northern R.R. Co. v. James*, ("*James*"), 725 F.Supp. 1058, 1063–64 (D.Minn.1989). Since the court's holding that it had only "limited" jurisdiction amounts, in the context of this case, essentially to a holding that it lacked subject matter jurisdiction, in the interest of brevity we shall refer hereafter to the latter as the court's holding.

Believing that appellee John James, Commissioner of Revenue of the State of Minnesota (the "Commissioner" or the "State") had imposed a discriminatory ad valorem tax against it, BN commenced the instant action pursuant to the jurisdictional grant provided by § 306(2) of the Railroad Revitalization and Regulatory Reform Act of 1976, 49 U.S.C. § 11503(c) (1988) (the "Act"). The district court held that BN's complaint demanded relief beyond the scope of § 306 and, as a result, it did not have jurisdiction to adjudicate the merits.

On appeal, BN argues that its complaint meets the jurisdictional requirements of § 306. We agree. For the reasons that follow, we reverse the order of the district court dismissing the complaint, and we remand with instructions to decide the case on the merits.

I.

We summarize only those facts and prior proceedings believed necessary to an understanding of the issues raised on appeal.

We begin with a brief overview to place the issues on appeal in context. Historically, federal courts have been extremely reluctant, due to principles of comity, to interfere with state tax schemes. *Matthews v. Rodgers*, 284 U.S. 521, 525 (1932); *Boise Artesian Water Co. v. Boise City*, 213 U.S. 276, 281 (1909). As a general principle that reluctance still exists. *Fair Assessment in Real Estate Ass'n v. McNary*, 454 U.S. 100, 108–10 (1981) (declining to enjoin state tax enforcement under 42 U.S.C. § 1983). Indeed, as provided in 28 U.S.C. § 1341 (1988), federal courts "shall not enjoin, suspend or restrain" state tax levies "where a plain, speedy and efficient remedy may be had in the courts of such State."

As a result of this historic reluctance, state tax schemes that imposed disproportionately high assessments on railroads were shielded from federal judicial scrutiny. Congress perceived these discriminatory taxes as one cause of the woes of the railroad industry in the 1960's and 1970's. Its solution was to carve out an exception to § 1341.

That exception is set forth in § 306 of the Act. Section 306(1) has four subsections, each prohibiting the states and their subdivisions from committing certain acts of taxation. Section 306(1)(d), which bars the states from imposing a tax "which re-

---

* Of the Second Circuit, sitting by designation.

sults in discriminatory treatment of a common carrier by railroad", is the subsection involved on the instant appeal. Section 306(2) provides for federal subject matter jurisdiction, with exceptions not relevant here, for actions alleging violations of the statute. The language of § 306 was altered slightly when it was codified. *See* 49 U.S.C. § 11503 (1988). The changes, however, are not substantive. *Burlington Northern R.R. Co. v. Oklahoma Tax Comm'n*, 481 U.S. 454, 457 n. 1 (1987). We continue the practice of our Court in citing to § 306. *E.g., Trailer Train Co. v. Leuenberger*, 885 F.2d 415, 416 n. 2 (8th Cir. 1988), *cert. denied,* 109 S.Ct. 2065 (1989).

Since the State of Minnesota does not tax the personal property of corporations in general, § 306(1)(d) bars it from taxing the personal property of railroads. The State stipulated here that it was so limited. The dispute between the parties is over whether the State's assessment of BN for tax year 1987, which purported to tax only real property, had the *effect* of levying a tax on a portion of BN's personal property in Minnesota.

The Commissioner assesses corporate taxes on railroads, including BN, as follows: He first assesses, as a unit, the total value of the railroad's system-wide property. He then determines the portion of the system-wide value properly allocable to Minnesota. He then "breaks out" the deduction for personal property. The personal property value is determined by calculating both the personal property actually located in Minnesota and that which is fairly allocated to Minnesota. The personal property "break out" is accomplished by dividing the book value of Minnesota personal property (as assessed) by the total book value of Minnesota real and personal property combined.

BN found that the Commissioner levied taxes on a portion of its personal property in Minnesota for the tax year 1987. The Commissioner had calculated that 31.38% of BN's Minnesota property was personal property. According to BN, the proper figure is 37.88%. As a result, BN estimated that it was overcharged by $761,885 for that year. It therefore commenced the instant action to enjoin the State from collecting the tax to the extent of the alleged overcharge.

In light of the limited scope of BN's action, the parties entered into an extensive stipulation of facts, totaling 18 pages and 46 paragraphs. The stipulation outlined in detail the methodology by which the Commissioner calculated BN's tax. Having outlined the methodology by which the Commissioner assessed the value of BN's Minnesota property, the stipulation stated, at paragraph 16, that:

"Although BN does not concur in all aspects of the Commissioner's determination of its system value, it is not challenging that determination of the system value for purposes of this action. BN hereby reserves the right to challenge the Commissioner's methodology in other tax years and in any forum."

*Reprinted in James, supra,* 725 F.Supp. at 1066.

At paragraph 27, the stipulation characterized the dispute as arising from BN's "claim that the Commissioner utilized a procedure which included a portion of BN's personal property, which had been allocated to the State from the unit value, in the final valuation." *Id.* at 1067. Then, at paragraph 42, the parties agreed that the district court "need only determine the appropriate personal property deduction [for BN in tax year 1987] in order to resolve this suit." *Id.* at 1070.

At the risk of oversimplifying, the dispute between the parties boils down to whether personal property not actually located in Minnesota, but which contributes to BN's total Minnesota unit value, should be included in the deduction. The language of the stipulation notwithstanding, the district court viewed the dispute as one that challenged "the appropriateness of Minnesota's chosen valuation method." *Id.* at 1063. Holding that § 306 did not give it the authority to make such an assessment, the court dismissed the action for lack of subject matter jurisdiction. In so doing, it failed to address the question as framed in BN's complaint and in the stipulation: did

the state levy taxes on a portion of BN's personal property in tax year 1987?

This appeal followed.

## II.

We stress at the outset the limited scope of our task. We are reviewing a dismissal essentially for lack of subject matter jurisdiction. Federal question jurisdiction is lacking only when the federal claim invoking it "is plainly without color of merit." *Binderup v. Pathe Exchange, Inc.,* 263 U.S. 291, 306 (1923); *see also Hagans v. Lavine,* 415 U.S. 528, 536–37 (1974) (federal claim must be "substantial").

### (A)

■■■ Since subject matter jurisdiction on the instant appeal is premised solely on § 306, we begin by analyzing the language of that statute. Section 306(1)(d) forbids states from imposing a tax *"which results in discriminatory treatment of a common carrier by railroad ..."* (emphasis added).

In light of that straightforward provision, the Supreme Court has made it clear that a plaintiff railroad need not prove that a state intended to discriminate. Rather, it need only show that the tax had a discriminatory effect. *Oklahoma Tax Comm'n, supra,* 481 U.S. at 463. The opinion in *Oklahoma Tax Commission* resolved a split among the circuits (i.e., as to whether § 306 required a showing of discriminatory intent or merely discriminatory effect) in favor of the position supported by our Court. *Burlington Northern R.R. Co. v. Bair,* 766 F.2d 1222 (8th Cir.1985); *Ogilvie v. State Bd. of Equalization,* 657 F.2d 204 (8th Cir.), *cert. denied,* 454 U.S. 1086 (1981). Only recently, we again stated that "Section 306(1)(d) prohibits the imposition of any other tax that *results in discrimination* against railroads." *Trailer Train Co., supra,* 885 F.2d at 417 (emphasis in original).

In order to succeed on the merits, a plaintiff railroad must prove the discriminatory effects of the tax by a preponderance of the evidence. *Bair, supra,* 766 F.2d at 1226 (§ 306 requires burden of proof "generally applicable to civil proceedings").

The common law principle of federal deference to state tax schemes, as amplified by 28 U.S.C. § 1341, has no place in a § 306 analysis. Section 306(2) explicitly forecloses reference to § 1341. With respect to traditional common law restraint, the legislative history of § 306 demonstrates that "Congress, [having] thoroughly considered the effects [§ 306] would have on state taxation policies and practices ... concluded that both a federal remedy and a federal forum were necessary to further the strong national policy of protecting interstate commerce from the disruptive effects of discriminatory state and local taxation of railroad property." *Southern Ry. Co. v. State Bd. of Equalization,* 715 F.2d 522, 529 (11th Cir.1983) (citing legislative history), *cert. denied,* 465 U.S. 1100 (1984).

### (B)

■■■ The district court opinion in the instant case recited most of the applicable legal principles, as set forth above, and acknowledged that the stipulation framed the dispute between the parties as whether the Commissioner's calculations had the discriminatory effect of taxing a portion of BN's personal property. The court did not regard BN's complaint as insubstantial. Nevertheless, it dismissed the complaint for lack of jurisdiction.

The court acted as it did because it characterized the nature of the action differently than the parties, i.e., as a challenge to the underlying valuation methodology rather than the alleged discriminatory assessment as such. Having so characterized the action, the court held that, as a threshold to the assertion of jurisdiction on the merits, BN was required to prove that the methodology lacked a rational basis and was enacted with discriminatory intent. The court then held that BN failed to carry its burden in that regard. *James, supra,* 725 F.Supp. at 1063–64.

The district court's holding rested on two cases. The first is *Oklahoma Tax Commission.* As we observed above, that opinion construed § 306 as barring tax schemes

that had a discriminatory effect on railroads. The Supreme Court, however, explicitly left open the question whether § 306 permitted a railroad to challenge "the accounting methods by which the State determined the railroad's value, or is instead restricted to challenging the factual determinations to which the State's preferred accounting methods were applied." *Oklahoma Tax Comm'n, supra,* 481 U.S. at 463 n. 5

The second case is *Union Pacific R.R. Co. v. State Tax Comm'n,* 716 F.Supp. 543 (D.Utah 1988). Addressing the question left open by the Supreme Court, the *Union Pacific* court held, after a trial on the merits, that § 306 did not encompass challenges to valuation methodologies. *Id.* at 553. That court stated that it would not "disturb" a "methodology [that] has a rational basis and was not chosen with the intent of overvaluing railroads." *Id.* at 557.

There is no question that the district court in the instant case relied heavily on *Union Pacific.* The opinion below stated that it found the *Union Pacific* analysis "persuasive," and it applied the standard quoted above to dismiss BN's complaint. *James, supra,* 725 F.Supp. at 1063. We find that reliance to have been misplaced for several reasons.

The primary reason is the differing procedural postures of the two cases. Assuming arguendo that *Union Pacific*'s holding—that a challenge to valuation methodology is beyond the scope of § 306—correctly states the law in this Circuit, the district court nevertheless erred in dismissing the action for lack of subject matter jurisdiction. In *Union Pacific,* the plaintiff apparently accepted the court's definition of the disputed issue as one involving a challenge to methodology. BN does not. The stipulation between the parties at least arguably framed the issue as one involving application of an accepted methodology. Certainly BN's claim to that effect is sufficient to survive the jurisdictional hurdle.

Having framed the issue as such, we hold that § 306 requires the district court to address the merits of BN's complaint. We find strong support for that holding in our opinion in *Bair.* At issue in *Bair* was a challenge to an assessment under § 306(1)(a) (prohibiting discriminatory valuation of railroad property), rather than § 306(1)(d). The district court had held that its inquiry was limited to a determination of the question whether the method of valuation was arbitrary or capricious. In remanding for a determination of the merits, we stated that § 306 imposed a duty on the district court to make "its own findings regarding valuation." *Bair, supra,* 766 F.2d at 1225. A remand in the instant action will simply require that the district court make findings on whether any of BN's personal property was taxed.

Secondly, we find one element of *Union Pacific,* as applied by the court below, difficult to accept, i.e., its requirement that a plaintiff prove discriminatory intent and an absence of a rational basis. We have reviewed the Supreme Court's opinion in *Oklahoma Tax Commission,* and we find no room for an exception to its rule that discriminatory intent is *not* a necessary element of a § 306 action. *See also Bair, supra,* 766 F.2d at 1226 ("there is no intent element in section 306").

We recognize that our holding is not trouble-free. The parties agree that in cases like this the line between "methodology" and "application" is so thin as to be almost ephemeral. The district court obviously believed that, despite the parties' characterization of the issue, it would be required to weigh competing methodologies were it to determine the merits. That belief may or may not prove to be true. BN, however, unquestionably has presented a colorable allegation that the methodology used by Minnesota has resulted in a discriminatory tax. That allegation alone is sufficient to establish subject matter jurisdiction.

### (C)

■ The Commissioner and *amicus* Duluth, Winnipeg & Pacific Railway Co. apparently recognize that the district court may have erred in its jurisdictional ruling. Both devote significant portions of their

briefs to the contention that the district court opinion, read "carefully," reached the merits "implicitly." The briefs then go on to argue the merits.

The issues addressed by the district court may bear on the merits, but it is inescapable that the court found "its subject matter jurisdiction to be limited to a determination of whether there is a rational basis and non-discriminatory purpose underlying the State of Minnesota's valuation methodology." *James, supra,* 725 F.Supp. at 1063–64. In apparent contrast to the views of the Commissioner and the *amicus,* we accept the court's statement at face value. Accordingly, and in light of the fact that the record below was not fully developed as a result of the summary dismissal, we decline the invitation to rule on the merits.

### (D)

We have one additional instruction for the district court on remand. In its opinion, the district court, relying on *McNary,* stated that principles of comity required that § 306 be applied narrowly. *James, supra,* 725 F.Supp. at 1062–63. We have stated previously, and now reemphasize, that § 306 was intended to preempt those principles as applied to challenges by railroads to allegedly discriminatory taxes. *Southern Ry., supra,* 715 F.2d at 529. We therefore instruct the district court to reach its decision on the merits based on an analysis of § 306, its legislative history and interpretive case law.

### III.

To summarize:

We hold that § 306 provides subject matter jurisdiction for BN's complaint. Accordingly, we reverse the district court's order dismissing the action, and we remand with instructions to determine whether a discriminatory effect has been created. Our opinion today should not be construed as reflecting any views on the merits.

Reversed and remanded.